943 So.2d 449 (2006)
Karen ROUSSELL
v.
ST. TAMMANY PARISH SCHOOL BOARD.
No. 2004 CA 2622.
Court of Appeal of Louisiana, First Circuit.
August 23, 2006.
*451 John B. Fox, Robert W. Booksh, Jr., New Orleans, for Plaintiff-Appellee/Appellant Karen Roussell.
Harry P. Pastuszek, Jr., Patrice W. Oppenheim, Mandeville, for Defendant-Appellant/Appellee *452 St. Tammany Parish School Board.
Before: PARRO, McDONALD, and HUGHES, JJ.
PARRO, J.
In this workers' compensation case, the employer appeals from a judgment in favor of its employee that awarded indemnity benefits, medical expenses, penalties, and attorney fees.[1] The employee answered, seeking to have the judgment modified to award certain unpaid medical expenses, together with penalties and attorney fees, judicial interest, court costs, and additional attorney fees for defending the appeal. For the following reasons, we amend in part and affirm as amended.

Facts and Procedural History
Karen Roussell (Roussell) was employed by the St. Tammany Parish School Board (Board) as a lunchroom or food technician at a school in St. Tammany Parish. On August 23, 2001, Roussell injured her right arm, wrist, and hand during the course of her employment when the gear on a pot-lifting device came loose and spun out of control, hitting her right hand and wrist as she tried to lift a heavy pot. She immediately reported this injury, and the Board began paying workers' compensation benefits to her.
Initially, Roussell received treatment from Dr. Cullaso with Instant Care Family Medical Center, and then on August 29, 2001, she was examined by Dr. James R. Gosey, Jr., an orthopedist chosen by the Board. Dr. Gosey's diagnosis was a right forearm contusion and possible early onset of reflex sympathetic dystrophy (RSD).[2] According to Dr. Gosey, Roussell was not fit for duty at that time. She began physical therapy at his recommendation on August 31, 2001. On September 6, Dr. Gosey's chart notes stated:
She needs 2 hands to work. No way she can work with that hand, and she's right-handed, so even a desk job or a writing job would be a problem.
Dr. Gosey referred her to Dr. Christopher Y. Lew, an anesthesiologist, who performed a stellate ganglion block on September 18, 2001.[3] On September 20, 2001, Dr. Gosey noted that Roussell could be working and released her to return to work as a lunchroom technician the following week. By this time, one month post-injury, Dr. Gosey had already established a diagnosis of RSD.
Roussell returned to work on September 28, 2001, but experienced pain while trying to lift a case of milk cartons. She left work and sought treatment at the emergency room at Slidell Memorial Hospital for right hand, wrist, and arm pain with numbness, as well as neck pain. She did not return to work following this incident. On October 3, 2001, Roussell sought treatment from Dr. John P. Sweeney, an orthopedist and hand surgeon. In a letter to the Board's third party administrator, *453 Trinity Insurance Services (Trinity),[4] Dr. Sweeney stated that the magnitude of Roussell's pain was not explained by the magnitude of the injury sustained, noting that she may have early posttraumatic dystrophy; his working diagnosis was early regional pain syndrome. Dr. Sweeney recommended stress loading and activity of the right upper extremity, continued physical therapy, and a series of stellate ganglion blocks. According to Dr. Sweeney, it was reasonable for Roussell to return to "alternative" work and use the hand in all but heavy lifting activities. By letter dated November 2, 2001, Dr. Sweeney opined that it was in Roussell's best interest to use her right arm and ordered rigorous physical therapy. Following a November 7, 2001 examination, Dr. Sweeney noted her "severe" pain and "exquisite tenderness everywhere about her right upper extremity from her scapula all the way to her fingertips," as well as a bluish discoloration of her right hand, a thinner circumference of her right forearm and upper arm, and her inability to touch her fingertip to her palm. He concluded that Roussell's condition was looking more like posttraumatic dystrophy. Because she was not using her right arm at all, refused injections, and was not responding to physical therapy, he said that from an orthopedic/therapeutic perspective, he had very little more to offer her.
Roussell returned to work again on November 11 and 12, 2001, but was asked by her supervisor to leave, because Dr. Sweeney had not released her to full duty and there was no alternative work available. Roussell saw Dr. Sweeney again on November 30, 2001, at which time he confirmed the dystrophic changes in her hand, bluish discoloration, shininess of her skin, and very little motion of her fingers, which he characterized as "rather typical features of regional pain syndrome and posttraumatic dystrophy." However, Dr. Sweeney believed that Roussell's non-use of her right hand was counterproductive. He continued to recommend a course of ganglion blocks, followed by stress loading exercises, but reiterated that he had "very little more to offer her." Upon receipt of Dr. Sweeney's opinion, the Board terminated payment of indemnity benefits effective December 8, 2001.
When it appeared Dr. Sweeney would be unable to do anything more to help her, Roussell went to an Ochsner facility where she was seen by a general practitioner, Dr. Geralynn G. Morrison. Dr. Morrison referred her to Dr. Welhong Pan, a neurologist and pain treatment specialist. On December 18 and 19, 2001, Drs. Morrison and Pan sent written notification to the Board, stating Roussell was unable to work. Without further investigation, and relying on previous orders by her other physicians that Roussell could return to alternative work, the Board declined to reinstate payment of workers' compensation benefits. On January 15, 2002, Roussell filed a disputed claim concerning the August 23, 2001 accident in which she sustained injury to her right arm, wrist, and hand, contending the Board had Improperly terminated her benefits. She urged that she was entitled to medical and indemnity benefits, mileage reimbursement, attorney fees, and penalties.
In an amended petition filed June 24, 2002, Roussell stated that her orthopedic surgeon had prematurely returned her to work in September 2001, at which time she suffered an aggravation of her prior injury and a neck injury when attempting to lift *454 milk containers. Roussell filed a second amended petition to allege that since her attempted return to work, the Board had failed to pay weekly indemnity benefits and medical expenses. She alleged that she was unable to work on account of RSD and other injuries and was in need of further medical treatment. She further contended that the Board had arbitrarily refused to authorize treatment by Dr. Richard A. Morse, another neurologist and pain specialist at the Touro Pain Clinic, whose services she sought after Dr. Pan stopped practicing medicine to conduct research. Roussell requested judgment against the Board for "all past and future indemnity benefits, for all past and future medical expenses, for mileage to and from medical care providers, for penalties for failing to pay indemnity benefits, for penalties for failing to pay medicals, for penalties for failing to authorize medical treatment and for attorneys fees for all of the above, together with pre-judgment interest and all costs."
In a motion for partial summary judgment, Roussell sought an order requiring the Board to approve and agree to pay Dr. Morse as Roussell's first choice of a pain specialist and replacement neurologist. Her motion was denied by the workers' compensation judge (WCJ), and Roussell applied for a supervisory writ to this court. This court granted the writ, reversed the WCJ's order as "unreasonable," granted Roussell's motion, and remanded the matter for a determination of whether the Board had been arbitrary and capricious and whether an award of attorney fees was warranted. Roussell v. St. Tammany Parish Sch. Bd., 03-0210 (La.App. 1st Cir.5/16/03) (unpublished writ action). The Board's application for rehearing to this court was denied, and it sought review by the supreme court pursuant to an application for a supervisory writ, which was also denied. Roussel v. St. Tammany Parish Sch. Bd., 03-2123 (La.11/7/03), 857 So.2d 501.
Pursuant to this court's order, on November 24, 2003, the Board authorized Roussell to see Dr. Morse. Dr. Morse agreed that Roussell suffered from RSD, and he recommended an extensive in-patient pain management treatment program. Before authorizing such treatment, the Board requested that she be seen by Dr. Karen J. Ortenberg for a second medical opinion. Roussell agreed to this examination, after which Dr. Ortenberg's diagnosis was that she suffered from an advanced stage of RSD caused by the August 2001 accident. As of April 23, 2004, the Board reinstated payment of workers' compensation benefits on the basis of a temporary total disability.
On June 1, 2004, the Board filed an amended answer to the amended petitions, asserting for the first time the affirmative defense provided by LSA-R.S. 23:1081(1)(a) and noting in an amended pre-trial statement that one of the issues for trial was whether Roussell may have intentionally injured herself.[5] At the trial of this matter on June 2, 2004, Roussell objected to the Board's filing on the previous day. In connection with a motion to strike filed by Roussell, the WCJ ordered that this pleading be stricken from the record, based on the lateness of the filing.
After a trial, the WCJ found that Roussell had established that she was temporarily and totally disabled from December 8, 2001, through the date of trial and was entitled to weekly benefits from that date through April 22, 2004. The WCJ found that although the Board was not unreasonable *455 in its initial termination of benefits, after receiving the work restrictions issued by Drs. Pan and Morrison on December 18 and 19, 2001, the Board should have done some further investigation of her condition. As a result of the Board's unreasonable failure to reinstate indemnity benefits upon receipt of the "off-work slips" from Drs. Pan and Morrison, the WCJ awarded $2,000 in penalties and $5,000 in attorney fees. Additionally, the WCJ ordered reimbursement or payment of medical expenses incurred at Ochsner Clinic, Albertson's Pharmacy, and Instant Care Family Medical Center. Finding that the Board's failure to timely reimburse her or pay these providers, as well as Northshore Discount Pharmacy, constituted four separate violations of LSA-R.S. 23:1201(E), the WCJ awarded $2,000 in penalties and $2,000 in attorney fees in connection with each violation.[6] In concluding, the WCJ declared that all relief not specifically granted in the judgment was denied.
Pursuant to a motion for new trial filed by Roussell, the WCJ amended the judgment to order payment of the medical expenses incurred at the Northshore Discount Pharmacy, since the non-payment of these expenses had previously been found to constitute a violation of LSA-R.S. 23:1201(E), for which penalties and attorney fees had been awarded. However, the WCJ explicitly denied Roussell's motion on the issue of court costs and, with reference to judicial interest, cited the applicable law[7] and implicitly awarded such interest by amending her judgment to state that "all discretionary relief not specifically granted is hereby denied."
By post-trial motion, the Board also sought a new trial on the ground that Roussell had failed to produce clear and convincing evidence that she had a temporary, total disability. The Board urged that Roussell had not shown that she was unable to work, and therefore, the award of penalties and attorney fees related to its failure to reinstate indemnity benefits was erroneous. Concerning the awards of penalties and attorney fees associated with its failure to pay certain medical expenses, the Board also charged that they were erroneous, in that Roussell had failed to prove that she had made written demand for payment of these expenses, as required by LSA-R.S. 23:1201(E). Alternatively, the Board submitted that these awards were improper and excessive. The WCJ denied the Board's motion for new trial.
The Board appealed, urging that the WCJ erred in the following regards:
1. refusing to consider its intentional tort defense;
2. finding that Roussell was unable to engage in any gainful employment;

*456 3. finding that Roussell's disability after September 20, 2001, was caused by the August 23, 2001 accident;
4. finding that a second work-related accident occurred and caused her disability;
5. awarding and assessing penalties and attorney fees in connection with its failure to reinstate indemnity benefits in December 2001 and its failure to pay certain medical expenses;
6. awarding medical expenses for the treatment rendered by Drs. Pan and Morrison, based on Roussell's failure to prove the medical necessity of such treatment and a causal relationship to the August 23, 2001 accident;
7. finding that the Board did not have sufficient information to reasonably controvert Roussell's request for medical treatment;
8. finding that the submission of medical bills to the Board by Roussell's attorney on a repetitive basis constituted a pre-trial written demand for payment; and
9. awarding excessive penalties and attorney fees in connection with the Board's failure to pay certain medical expenses.
Roussell answered the appeal, urging that the WCJ erred in not explicitly ordering legal interest on the amounts awarded, in refusing to award court costs in her favor, and in failing to order payment of the medical bills from Charity Hospital and related penalties and attorney fees. Roussell also sought additional attorney fees for the legal work associated with this appeal.

Intentional Tort Defense
At the trial, Roussell objected to the Board's filing of an amended answer and pre-trial statement on the day before trial, which raised for the first time an affirmative defense[8] that no compensation was due because she had intentionally injured herself. The WCJ sustained the objection and ordered that these pleadings be stricken. The Board argues that the WCJ erred in refusing to consider its intentional tort defense.
Historically, pursuant to LSA-R.S. 23:1315, the judge in a workers' compensation case had discretion to allow amendments of the petition and answer at any stage of the proceedings. See Wade v. Calcasieu Paper Co., Inc., 95 So.2d 725, 727 (La.App. 1st Cir.1957). Before its amendment by 1983 La. Acts, 1st Ex.Sess., No. 1, § 1, LSA-R.S. 23:1315 read:
The petition shall be filed with the clerk of court and the judge shall fix by order a time and place for the hearing thereof, not less than three weeks after the date of service of the petition. A copy of the petition and of the order shall be served as a summons in a civil action upon the adverse party within four days after the filing of the petition.
Within ten days after the service of the petition the adverse party shall answer the same and shall admit or deny the substantial averments thereof and shall state the contention of the defendant with reference to the matter in dispute as disclosed by the petition. The answer shall be verified in like manner as required for a petition. The court may in its discretion grant further time for filing the answer or hearing the petition and allow amendments of the petition *457 and answer at any stage of the proceedings. [Emphasis added].
Act 1 of 1983 eliminated the language relating to the amendments of the petition and answer. Section 1315 was repealed in its entirety by 1988 La. Acts, No. 938, § 3, effective January 1, 1990. Currently, the time for the hearing, service of the petition, and filing of an answer are governed by LSA-R.S. 23:1310.3, which has no reference to amendment of the petition or answer.
The WCJ is not bound by the technical rules of procedure, other than as provided in the workers' compensation law. LSA-R.S. 23:1317(A). Because the worker's compensation law no longer addresses the timing or procedure for amendments to pleadings, we conclude that the decision as to whether to allow the filing of an amended answer under these circumstances was a matter within the WCJ's discretion. In view of the Board's attempted last-minute assertion of an affirmative defense of which the claimant had no prior notice, by way of amended pleadings filed on the eve of the trial, we find no abuse of discretion by the WCJ in striking such pleadings.[9]
Entitlement to Indemnity Benefits Disability
The Workers' Compensation Act provides coverage to an employee for personal injury by accident arising out of and in the course of his employment. See LSA-R.S. 23:1031(A). An employee must prove the chain of causation required by the workers' compensation statutory scheme as adopted by the legislature. He or she must establish that the accident was work-related, the accident caused the injury, and the injury caused the disability. DeGruy v. Pala, Inc., 525 So.2d 1124, 1130 (La.App. 1st Cir.), writ denied, 530 So.2d 568 (La.1988). In reviewing the WCJ's factual determinations, including whether the employee has discharged his burden of proof, this court is bound by the manifest error standard of review. Lafleur v. Alec Elec., 04-0003 (La.App. 1st Cir.12/30/04), 898 So.2d 474, 478, writs denied, 05-0276, 05-0277 (La.4/8/05), 898 So.2d 1287 and 1288. Under this two-part test, the appellate court must determine from the record whether there is a reasonable factual basis for the finding and whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
The parties stipulated that Roussell was involved in a work-related accident in the course and scope of her employment on August 23, 2001. The Board urged that Roussell failed to prove by clear and convincing evidence that she was disabled, in that she did not establish that she was physically unable to engage in any gainful employment.
Pursuant to LSA-R.S. 23:1221(1)(c), a claimant has the burden of proving his or her temporary, total disability by clear and convincing evidence. In the absence of clear and convincing evidence that the employee is physically unable to engage in any employment, the claimant's demand for temporary total disability benefits must fail. Augustus v. St. Mary Parish Sch. Bd., 95-2498 (La.App. 1st Cir.6/28/96), 676 So.2d 1144, 1149. Clear and convincing proof has been defined as an intermediate standard failing somewhere between the ordinary "preponderance of the evidence" civil standard and the "beyond reasonable doubt" criminal standard. Alexander v. Autozone, Inc., *458 04-871 (La.App. 3rd Cir.12/8/04), 889 So.2d 366, 371-72. Clear and convincing proof requires objective medical evidence of the disabling condition causing the employee's inability to engage in any employment. Jackson v. Domtar Indus., Inc., 98-1335 (La.App. 3rd Cir.4/7/99), 732 So.2d 733, 738, writ denied, 99-1369 (La.7/2/99), 747 So.2d 21. The claimant must provide objective, expert testimony as to his medical condition, symptoms, pain, and treatment, in addition to personal testimony, in order to meet this standard. Hurst v. Sanderson Farms, Inc., 02-1334 (La.App. 1st Cir.5/9/03), 846 So.2d 954, 958. The factual finding of whether a claimant is entitled to temporary total disability benefits is subject to the manifest error or clearly wrong standard of appellate review. Banks v. Indus. Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556; Gordon v. Sandersons Farms, 96-1587 (La.App. 1st Cir.5/9/97), 693 So.2d 1279; Augustus, 676 So.2d at 1150.
Roussell, who is right-side dominant, testified that although she liked her job, she could no longer perform her work as a food technician, because of the numbness and lack of strength in her right extremity. Before the accident, she had trained to become a teacher's aid or para-professional and had passed the test to obtain her certification. However, now her right hand shook and got cold, and she could not close her right hand or write with it.[10] At times, she needed help with personal hygiene and dressing. She testified that there was no work she could do with her right arm that did not cause her pain, and since November of 2001, none of her doctors had told her she could return to work. The Board had not offered her light-duty work or an alternative position. Because there was no light-duty work as a food technician, her attempts at returning to work involved returning to regular duty, which she could not do.
According to her supervisor, Roussell had been a good employee and a hard worker. She said a food technician must be able to do full-duty work, as there was no light-duty work in the cafeteria. When Roussell returned to work in September 2001, she could not use her right hand or arm. Although she had not seen the incident, the supervisor said she was aware that when Roussell tried to lift a milk crate with 60 or 70 milk cartons in it, she experienced problems and left work that day to obtain medical treatment at a hospital.
Roussell's husband testified that she had enjoyed working, but since the injury, was unable to use her right arm and hand, because "it's like it's dead." Because of this, she had tried to learn to write again with her left hand. She could no longer clean house, needed help with dressing and grooming, and could no longer do the things she had enjoyed in the past, such as gardening, fishing, and hunting. He further stated that the pain extends from the fingertips of her right hand all the way up to her neck.
On November 14, 2002, Dr. Morrison said Roussell had a neurological condition, RSD, which caused her pain on a fairly constant basis, some of which might be relieved by treatment by a neurologist. She opined that Roussell's life and livelihood had been drastically changed by this illness and that she must be treated by a specialist to insure maximum possible chances for recovery. Dr. Morrison noted that on December 18, 2001, Roussell was undergoing testing and could not return to *459 work. Dr. Pan also reported that as of December 19, 2001, Roussell was not able to return to work because of her inability to lift.
Dr. Morse performed a chronic pain evaluation of Roussell on January 8, 2004. He indicated that the history given by Roussell closely paralleled the outside medical reports of her physicians. According to Dr. Morse, Roussell showed RSD and complex regional pain symptoms on a posttraumatic basis. Being 28 months post injury, Dr. Morse opined that Roussell was probably into Stage 3 of RSD, the atrophic stage. He outlined an in-patient treatment plan that included drug therapy, consultation with a rheumatologist and neurologist, activity program, and pain interruptive measures. In concluding, Dr. Morse remarked:
Although [Roussell] had appropriate initial workup as time went on, and the RSD seems to have been apparent very early after the injury, she has not really, beyond one interventional technique, had the opportunity for consistent program combining all of the psychological, rehab, and pharmacological modalities together with pain interruption, which offers a distinct advantage and for which our program is specifically structured.
Desiring a second medical opinion,[11] the Board had Roussell examined by Dr. Ortenberg, whose impression confirmed that the history given by Roussell, physical examination, ancillary studies, and reports by other physicians were consistent with a diagnosis of right upper extremity complex regional pain syndrome, type I, initiated by an injury at work on August 23, 2001. Dr. Ortenberg opined that the bone scan performed soon after Roussell's injury was consistent with early RSD. She recommended that Roussell participate in an integrated multidisciplinary treatment approach to address complex regional pain syndrome, type I, to the right upper extremity accompanied with overlying myofascial syndrome and headaches.
The evidence in the record clearly and convincingly supports a finding that Roussell was physically unable to return to her job as a food technician; furthermore, the objective medical evidence establishes the existence of a disabling condition making it impossible for her to engage in any employment during the time period at issue. She cannot use her right hand and arm with any consistency; therefore, sedentary jobs that might require her to write or use a keyboard are beyond her present capabilities. Moreover, she testified that about three times each week, she experiences episodes of excruciating pain from her fingertips to her neck. This testimony was supported by her husband and the observations of every doctor who treated or examined her, and is consistent with their unanimous diagnosis that she suffers from chronic RSD and requires aggressive pain-management treatment. We conclude, therefore, that the WCJ's finding was supported by objective, expert testimony as to Roussell's medical condition, symptoms, pain, and treatment, in addition to her personal testimony. Therefore, the WCJ did not err in concluding that Roussell has met the standard of proof and is entitled to TTD benefits.
Causation
On appeal, the Board challenged the WCJ's finding that Roussell had shown that her disability after September 20, 2001, was caused by the August *460 23, 2001 accident or a second work-related accident. A claimant must establish a causal connection between the accident and the resulting disability by a preponderance of the evidence. West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1147 (La.1979). Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the fact finder based on all credible evidence. DeGruy, 525 So.2d at 1132.
The WCJ determined that the evidence established that Roussell's August 2001 injury resulted in her RSD. After an extensive review of the record, we conclude that this finding is supported by all of the lay and medical evidence and is not manifestly erroneous.

Medical Expenses
An employer has a statutory duty to furnish all necessary medical treatment caused by a work-related injury. LSA-R.S. 23:1203(A); Patterson v. Long, 96-0191 (La.App. 1st Cir.11/8/96), 682 So.2d 1327, 1334, writ denied, 96-2958 (La.2/7/97), 688 So.2d 499. The right to reimbursement for medical expenses is separate and distinct from the right to indemnity benefits. See Ridlen v. St. Charles Manor Nursing Ctr, Inc., 94-275 (La.App. 5th Cir.10/12/94), 644 So.2d 244, 247, writ denied, 94-3039 (La.2/3/95), 649 So.2d 410. Whether the claimant is entitled to medical benefits is ultimately a question of fact, and the fact finder's resolution of that issue may not be disturbed by the appellate court in the absence of manifest error. Parfait v. Gulf Island Fabrication, Inc., 97-2104 (La.App. 1st Cir.1/6/99), 733 So.2d 11, 19.
To recover medical expenses authorized under LSA-R.S. 23:1203, the claimant must prove by a preponderance of the evidence that the expenses are reasonably necessary for treatment of a medical condition caused by the work injury. Parfait, 733 So.2d at 19. An award of medical expenses must be limited to those expenses shown to have been made necessary by the work-related accident. A claimant is not entitled to recover for medical expenses where he or she fails to substantiate a claim. Starks v. Universal Life Ins. Co., 95-1003 (La.App. 1st Cir.12/15/95), 666 So.2d 387, 391, writ denied, 96-0113 (La.3/8/96), 669 So.2d 400. Nonetheless, when a claimant alleges that he or she incurred medical expenses and that allegation is supported by a bill, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support the inclusion of the item in the judgment. Parfait, 733 So.2d at 20; Augustus, 676 So.2d at 1155.
The Board argues that the WCJ erred in awarding medical expenses for treatment rendered by Drs. Pan and Morrison, based on Roussell's failure to prove the medical necessity of such treatment and a causal relationship to the August 23, 2001 accident. However, Dr. Sweeney had stated that as an orthopedist, although Roussell continued to suffer the effects of RSD, he could do little more for her. In this situation, it was certainly reasonable for her to return to a general practitioner for additional medical treatment and for that doctor to make a referral to a pain specialist. Based on Roussell's testimony and the medical evidence, it is clear that Drs. Morrison and Pan were treating Roussell for a medical condition directly related to the accident in August of 2001. The WCJ's factual finding concerning these medical expenses was proven by a reasonable preponderance of the evidence. Consequently, the WCJ did not err in ordering the Board to pay the bills of these medical providers.
*461 Roussell urged that the WCJ erred in failing to order payment of the medical bills from Charity Hospital (Charity). Roussell testified that she went to Charity for tests that were recommended by Dr. Houser, a neurologist. She said Dr. Houser told her to go to Charity, because she could not afford to pay for the tests, had no insurance coverage, and was not receiving medical reimbursements from the Board. In 2003, an MRI of her brain and neck was performed at Charity, resulting in a diagnosis of a bulging cervical disc. However, Roussell did not call Dr. Houser to testify by deposition or at the trial, nor did she introduce a medical report or medical records from him. Moreover, her testimony did not indicate the circumstances under which she came to be examined or treated by Dr. Houser. After reviewing the record, we conclude that the WCJ did not err in finding that an award of medical expenses was not warranted for the testing at Charity, because Roussell failed to prove that the treatment was medically necessary and related to the accident.

Penalties and Attorney Fees
When Roussell was injured, two statutory provisions provided the authority for assessing attorney fees and/or penalties. LSA-R.S. 23:1201(F) covered situations in which the employer failed to commence payment of benefits timely, to pay continued installments timely, or to pay medical benefits timely. Under the applicable statutory provisions of Section 1201(F),[12] both penalties and attorney fees were recoverable unless the claims were reasonably controverted. See Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, 45. If the employer or insurer arbitrarily and capriciously discontinued payment of benefits due, LSA-R.S. 23:1201.2 would apply. Only attorney fees, but not penalties, were recoverable under Section 1201.2.[13]Id. These statutes provide for imposition of attorney fees and/or penalties to discourage indifference and undesirable conduct by employers and insurers, and are essentially penal in nature. Although the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. Cooper v. St. Tammany Parish Sch. Bd., 02-2433 (La.App. 1st Cir.11/7/03), 862 So.2d 1001, 1009, writ denied, 04-0434 (La.4/23/04), 870 So.2d 300.
Failure to pay medical expenses
Under the facts of this case, we agree that Roussell was entitled to recover penalties and attorney fees under LSA-R.S. 23:1201(F) for her employer's *462 failure to timely pay the specific medical expenses enumerated by the WCJ in the judgment, when those claims were not reasonably controverted by the Board. Medical benefits are a separate and distinct element of an injured employee's claim, and Section 1201(E)[14] states that medical benefits shall be paid within sixty days after the employer or insurer receives written notice thereof. Under Section 1201(F), unless reasonably controverted, failure to provide payment in accordance with any of the provisions of Section 1201, including Section 1201(E), shall result in the Imposition of penalties within the statutory limits and reasonable attorney fees. Both Section 1201(E) and 1201(F) are mandatory provisions. Medical benefits shall be paid timely and if not paid and not reasonably controverted, penalties and attorney fees shall result. A claim is reasonably controverted if the employer has sufficient factual and medical information to counter that presented by the claimant. See Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, 890.
The record in this case shows that Trinity and/or the Board's attorney received written notices of Roussell's medical expenses from her attorney, that those medical expenses were for treatments related to Roussell's RSD condition, and that they remained unpaid and/or unreimbursed at the time of trial. Although Dr. Sweeney had indicated that his own ability to treat Roussell was limited, he had not indicated that she had reached maximum medical improvement or that no further medical treatment would be necessary for the work-related RSD condition he had diagnosed. Trinity's claims adjuster testified[15] that neither Trinity nor the Board made any attempt to investigate whether the bills being submitted after December 2001 were medically necessary and related to Roussell's accident at work, despite the fact that a diagnosis of RSD had been made by the Board's choice of orthopedist as early as one month post-accident and was never altered by any other physician. Moreover, within the same month that benefits were discontinued, Trinity and the Board received unequivocal statements from two physicians that Roussell was still unable to work due to this condition. Therefore, we conclude that Roussell's claims for payment of these medical expenses were not reasonably controverted, and penalties and attorney fees were mandatory under LSA-R.S. 23:1201(F). The penalty imposed by the WCJ on each of these disputed claims was within the statutory limits, and the attorney fee awards were not an abuse of the WCJ's discretion under the facts and record in this case.
Failure to re-commence indemnity benefits
The Board also appeals the WCJ's award of penalties and attorney fees for its failure to investigate and reinstate indemnity benefits upon receipt of the "off-work slips" from Drs. Pan and Morrison in late December 2001. As to the WCJ's factual findings, the record supports the conclusion that the Board did not have sufficient evidence to counter the consistent medical information that it began receiving by the end of December 2001, showing that Roussell was still disabled as a result of RSD and that her disability was directly related to the August 2001 accident. We find no manifest error in this finding. Therefore, *463 the legal issue before us is whether the WCJ properly awarded penalties and attorney fees under Section 1201(F) in this case, based on the factual findings that there was a timely commencement of indemnity benefits, followed by a reasonable basis for the discontinuance of those benefits, and then an unreasonable failure to re-commence them when new medical information confirmed Roussell's continuing disability.
The clearest guidance we have found on this issue is the supreme court's statement in Brown, 721 So.2d 885, that a court must ascertain whether the employer reasonably controverted the claim "throughout the time he refused to pay all or part of the benefits allegedly owed." Id. at 890. The supreme court further stated:
If an employer or insurer reasonably controverts a claim and then becomes aware of information that makes his controversion of that claim unreasonable, he must then pay the benefits owed or be subject to penalties and attorney fees from that point forward.
Id. at 890-91. This statement is dicta, because the Brown case dealt with failure to commence and pay benefits timely and in the full amount due; it did not involve an unreasonable failure to re-commence benefits. However, this statement comports with the supreme court's historical recognition of the continuing nature of the employer's duty to investigate an injured employee's condition and to commence payment of benefits anew when later medical evidence suggests that the employee is still disabled. See, e.g., Johnson v. Insurance Co. of No. Am., 454 So.2d 1113, 1118 (La.1984) (insurer was justified in terminating benefits upon receipt of a doctor's report showing the employee could return to work, but a later report with conflicting information required the insurer to investigate whether reinstatement of benefits was called for); Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985, 989 (La. 1976) (insurer was not arbitrary and capricious in terminating benefits, but was arbitrary in refusing to resume compensation payments upon receiving medical evidence indisputably showing continued disability of the injured claimant, without at least having the employee re-examined or otherwise finding a reasonable basis to question the validity of such apparently reliable medical opinion).
The Williams case, which set out the distinction between Section 1201(F) and Section 1201.2, dealt only with arbitrary and capricious termination or discontinuance of benefits. Williams, 737 So.2d at 45. Like Brown, Williams did not address the unreasonable failure to re-commence benefits that is before us in this case.
In the case before us, the commencement of benefits was timely and in good faith, and the discontinuance of benefits was initially justified. However, within a matter of weeks, the clear medical information sent in writing to the Board established that Roussell was unable to work and that some form of disability benefits should be paid to her as a result of her accident. Upon receipt of this information, the Board's controversion of her claim became unreasonable and an obligation arose to commence benefits appropriate to her condition. See LSA-R.S. 23:1201(B), (C), and (D); see also Brown, 721 So.2d at 890-91; Parfait, 733 So.2d at 17 (an employer may not avoid penalties and attorney fees by blindly relying on an optimistic medical report in the face of later information indicating the possibility of continuing disability); Brown v. Kwok Wong, 02-2525 (La.App. 1st Cir.12/20/02), 836 So.2d 315 (penalties and attorney fees under Section 1201(F) were appropriate, because although indemnity benefits were *464 rightfully terminated regarding an employee's foot and ankle injury, they were never timely instituted thereafter for the back injury that became increasingly symptomatic); cf. Roberts v. Thibodaux Healthcare Ctr., 05-0774 (La.App. 1st Cir.3/24/06), 934 So.2d 84, 97 (when benefits were timely commenced and then properly discontinued, the employer's subsequent unreasonable failure to furnish necessary medical treatment required by Section 1203(A) justified Section 1201(F) penalties and attorney fees).[16]
We conclude that the WCJ did not err in imposing penalties and attorney fees under Section 1201(F) for the Board's unreasonable failure to re-commence installments of indemnity benefits in accordance with Section 1201 when the new medical information provided to it clearly established Roussell's disability and entitlement to such payments. Furthermore, the penalty imposed was within the statutory limits and the attorney fee award was not an abuse of the WCJ's discretion under the facts and record in this case.
Additional attorney fees for appeal
Roussell answered the appeal and requested additional attorney fees for the work necessitated by the appeal. Additional attorney fees are usually awarded on appeal when a party appeals, obtains no relief, and the appeal has necessitated additional work on the opposing party's counsel, provided that the opposing party appropriately requests an increase. Loup v. Louisiana State Sch. for the Deaf, 98-0329 (La.App. 1st Cir.2/19/99), 729 So.2d 689, 694; Hall v. McDonald Insulation, 537 So.2d 328, 333 (La.App. 1st Cir.1988). Based on these factors and the quality of the work done by Roussell's attorney on the appeal, an additional award of $2000 is appropriate, and the judgment will be amended accordingly.

Legal Interest
In her answer to the Board's appeal, Roussell also urged that the WCJ erred in refusing to explicitly award legal interest. However, as previously noted, in response to Roussell's motion for a new trial on this issue, the WCJ referenced the mandatory nature of legal interest and amended the judgment to provide that "all discretionary relief not specifically granted is hereby denied." LSA-R.S. 23:1201.3(A) uses mandatory language; therefore, an award of legal interest is not discretionary with the WCJ. Matthews, 762 So.2d at 1156. The interest attaches automatically from the date such payments were due until the judgment is satisfied, whether prayed for in the petition or mentioned in the judgment. Id. Therefore, the WCJ's amended judgment must be interpreted as an award of legal interest on all compensation awarded and all payments directed to be made by order of the WCJ from the date compensation was due until the date of satisfaction. With reference to legal interest on the award of penalties and attorney fees, such interest is due only from the date of judgment until paid. Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382, 1389. Because of the confusion which apparently continues to exist between the parties on the issue of legal interest, we will amend the judgment to make such an award explicit.

Court Costs
Roussell urged that the WCJ's refusal to award court costs in her favor *465 constituted error. In workers' compensation proceedings, the WCJ is required to assess the total cost of the proceedings to the party who has brought them when such proceedings were not based on a reasonable ground or to the party who has unreasonably denied payment of benefits. See LSA-R.S. 23:1310.9.[17] Under this statute, an award of the total cost of the proceedings is mandatory only upon a finding that a compensation proceeding has not been brought on a reasonable ground or that denial of benefits has not been based on a reasonable ground. If the WCJ does not make such a finding, Section 1310.9 is inapplicable and the issue is controlled by LSA-R.S. 23:1317(B).[18]See Boleware v. City of Bogalusa, 01-1014 (La. App. 1st Cir.12/20/02), 837 So.2d 71, 75. Under LSA-R.S. 23:1317(B), the question of awarding costs lies within the sound discretion of the WCJ, as it does with the district court judges under the general civil procedural provisions. Id.
The WCJ in this case made findings both ways as to the Board's reasonableness in making its decisions, concluding it was not unreasonable in initially discontinuing benefits, but was arbitrary and unreasonable in failing to reinstate those benefits and to pay medical bills. Therefore, because Section 1310.9 is not clearly applicable, we will review this issue under Section 1317(B), using the abuse of discretion standard.
The WCJ determined that Roussell's claim for TTD benefits was meritorious and awarded her the full amount of her claim, and further found that penalties and attorney fees were justified for the Board's unreasonable failure to reinstate those benefits when presented with medical justification and for failure to pay medical expenses when the right to such payments was not reasonably controverted. The record fully supports the factual findings underlying those awards. Because Roussell's claim to TTD benefits and payment of her medical expenses was established by the evidence, and the Board's denial of benefits was not based on reasonable grounds, we find that the WCJ's failure to assess the total cost of these proceedings to the Board was an abuse of discretion. The judgment will be amended and rendered accordingly.

Decree
For the foregoing reasons, the judgment of the Office of Workers' Compensation Administration is amended to explicitly include an award of legal interest on all benefits, indemnity and medical, to which Roussell is entitled, from the date each such benefit became due until satisfied. Legal interest is also awarded on all penalties and attorney fees from the date of *466 judgment until paid. In all other respects, the judgment is affirmed. The Board is ordered to pay Roussell additional attorney fees for the appeal in the amount of $2000. Costs of the proceedings before the WCJ, in the amount of $500, and of this appeal, in the amount of $732.50, are assessed against the St. Tammany Parish School Board.
AMENDED IN PART AND AFFIRMED AS AMENDED.
NOTES
[1] `The workers' compensation judge in this case was Elizabeth A. Warren of District 6.
[2] RSD is described as a chronic pain disorder involving the sympathetic nervous system, in which the body's normal system of pain perception is interrupted following some trauma, which may be a minor injury, but which produces an abnormal cycle of intractable pain that may spread to other areas of the body. It manifests with objective symptoms, such as initial redness and inflammation at the injury site, and later by blue discoloration, tremors, muscle dystrophy, and weakness in the affected areas.
[3] The record indicates she suffered a reaction to this procedure and refused further injection treatments.
[4] In answers to interrogatories, the Board stated it was self insured and Trinity was its claims administrator.
[5] LSA-R.S. 23:1081(1)(a) states that no compensation shall be allowed for an injury caused by the injured employee's wilful intention to injure himself or another.
[6] In oral reasons, the WCJ found that the Board's decision not to allow Roussell to choose Dr. Morse as her pain management physician was not arbitrary and capricious, and the judgment denied penalties and attorney fees for that decision. In the judgment, the WCJ also denied Roussell's request for payment of medical expenses for an MRI at Charity Hospital and expenses incurred with two other doctors, because Roussell had failed to prove that these expenses were reasonable, necessary, and related to her work-related accident. The judgment also included orders for additional court-ordered examinations, deferred a decision on in-patient pain management treatment by Dr. Morse until those reports were received by the WCJ, and reserved to Roussell her right to submit itemized mileage claims and request payment for those expenses.
[7] The WCJ referenced LSA-R.S. 23:1201.3(A) and this court's holding in Matthews v. VIP Int'l, Inc., 99-1632 (La.App. 1st Cir.6/23/00), 762 So.2d 1152, 1156, that an award of judicial interest under that statute was mandatory and must be calculated from the date each payment became due until paid.
[8] An affirmative defense, which must be asserted in the answer, is one raising a new matter that constitutes a defense to the action and will have the effect of defeating the plaintiff's demand on its merits. Webster v. Rushing, 316 So.2d 111, 114 (La.1975); LSA-C.C.P. art. 1005.
[9] See Jeffries v. Estate of Pruitt, 598 So.2d 379, 386 (La.App. 1st Cir.), writs denied, 599 So.2d 306 and 605 So.2d 1124 (La.1992).
[10] We note that Roussell's signature on various documents in the record is visibly disjointed and shaky.
[11] Trinity's adjuster testified that the Board asked Trinity to get a second opinion, "an anti-Morse type opinion" from another specialist to show that such treatment was not related or necessary. Although Dr. Ortenberg was the Board's choice for this opinion, the result actually confirmed Dr. Morse's opinion.
[12] LSA-R.S. 23:1201(F) was amended by 2003 La. Acts, No. 1204, § 1. Before its amendment, it stated, in pertinent part:

Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.
[13] LSA-R.S. 23:1201.2 was repealed by 2003 La. Acts, No. 1204, § 2. Before its repeal, it stated, in pertinent part:

Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims.
The substantive provisions of Section 1201.2 are presently found at LSA-R.S. 23:1201(I), and now include authorization for the award of a penalty of up to $8000, as well as reasonable attorney fees.
[14] There have been no changes to LSA-R.S. 23:1201(E) since Roussell's accident occurred in 2001.
[15] The adjuster who testified had only been assigned to Roussell's file for six months; his testimony was based on information in the Trinity claims file that he had with him at the trial.
[16] The correctness of whether Section 1201(F) is applicable to a violation of Section 1203(A) is not before us in this appeal.
[17] LSA-R.S. 23:1310.9 states:

If the workers' compensation judge before which any proceedings for compensation or concerning an award of compensation have been brought, under the Workers' Compensation Act, determines that such proceedings have not been brought on a reasonable ground, or that denial of benefits has not been based on a reasonable ground, the workers' compensation judge shall assess the total cost of the proceedings to the party who has brought them or the party who has unreasonably denied payment of benefits.
[18] LSA-R.S. 23:1317(B) was revised by 2004 La. Acts, No. 341, § 1, effective June 18, 2004. The applicable version of Section 1317(B) provided, in pertinent part:

Costs may be awarded by the workers' compensation judge, in his discretion, and when so awarded the same may be allowed, taxed, and collected as in other civil proceedings. The fees of expert witnesses shall be reasonable and shall not be allowed unless fixed in the judgment. The judgment rendered shall have the same force and effect and may be satisfied as a judgment of a district court.