NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2019 CA 1225

KEVIN R. SCOTT

VERSUS

PERFORMANCE CONTRACTORS, INC.

Judgment rendered___**AUG 0 6 2020**___

* * * * *

On Appeal from the
Office of Workers' Compensation, District 5
State of Louisiana
No. 17-04016

The Honorable Jason Ourso, Workers' Compensation Judge Presiding

* * * * *

Kevin R. Scott                                    Pro Se


Phillip E. Foco                                   Attorneys for Defendant/Appellee
Patrick H. Hunt                                   Performance Contractors, Inc.
Colin P. O'Rourke
Baton Rouge, Louisiana



* * * * *

**BEFORE: McCLENDON, WELCH, AND HOLDRIDGE, JJ.**

**HOLDRIDGE, J.**

In this workers' compensation case, Kevin R. Scott, Sr. appeals a summary judgment rendered in favor of Performance Contractors, Inc. We affirm.

**BACKGROUND**

On July 3, 2017, Mr. Scott filed this disputed claim in the Office of Workers' Compensation (OWC) seeking to recover wage and medical benefits from his former employer, Performance Contractors, Inc (Performance). Mr. Scott claimed that on March 17, 2017, he was exposed to a chemical while working as a laborer for Performance at Dow Chemical's facility in Plaquemine, Louisiana. Mr. Scott alleged that he sustained injuries to his head and neck as a result of this chemical exposure.

Performance filed a motion for summary judgment in which it asserted that Mr. Scott could meet his burden of proving that his injuries were caused by the alleged exposure on March 17, 2017. In support of the motion, Performance offered the following evidence: (1) the disputed claim for compensation; (2) Mr. Scott's deposition testimony; (3) the deposition testimony of one of Mr. Scott's treating physicians; (4) a choice of physician form executed by Mr. Scott identifying Dr. Douglas Swift as his designated physician; and 5) Dr. Swift's clinical notes.

Mr. Scott testified that around 5:00 a.m. on the morning in question, while using a portable bathroom, a bad smell came through the vents of the bathroom, which "almost took the wind" out of him. Although Mr. Scott was unable to identify the source of the smell, he stated that his eyes began to water, his head started hurting, and he became dizzy. Mr. Scott reported the incident to Dow safety personnel and a Performance worker. At approximately 6:00 a.m., Mr. Scott

2

had a meeting with Dow and Performance personnel during which he was told that the area in question was checked and nothing was found.

Later that day, Mr. Scott went to a Dow trailer and wrote a statement, then he went to see an on-site medical professional. Mr. Scott reported that he had been exposed to chemicals, had a headache, and was dizzy. He returned to work that day and the following day, but did not return to work on March 20, 2017, his next scheduled work day, and left his job with Performance on March 22, 2017. Mr. Scott stated that he could not work with Performance because he had headaches and was dizzy all of the time. He also stated that he had not worked any other jobs since the exposure incident. Mr. Scott testified that he did not experience headaches prior to the March 17, 2017 exposure incident.

Following the incident, Mr. Scott was treated for headaches by his primary care physician, who referred Mr. Scott to Dr. Dariusz Gawronski, a neurologist. Dr. Gawronski first saw Mr. Scott on April 18, 2017, at which time Mr. Scott's chief complaints were headaches and neck pain. Dr. Gawronski conducted neurological tests on Mr. Scott; none of those tests were abnormal. An MRI of Mr. Scott's brain revealed white matter changes. Dr. Gawronski admitted that he was unable to relate the changes in Mr. Scott's brain to a limited chemical exposure. However, he was able to state firmly that the types of changes reflected on Mr. Scott's scan occur very frequently in unexposed persons over the age of 60. X-rays of Mr. Scott's neck showed some spondylosis throughout his cervical spine, which Dr. Gawronski stated is probably a result of age-related degenerative changes and not very likely to be related to environmental exposures. Dr. Gawronski could not causally relate Mr. Scott's chronic headaches to a chemical exposure, admitting he does not know if the headaches are, more probably than not, related to any chemical exposure. Dr. Gawronski stated he would defer to a

3

different expert to make that decision, and his office referred Mr. Scott to a toxicologist, Dr. Douglas Swift.

On May 14, 2018, Mr. Scott chose Dr. Swift as his treating physician. According to Dr. Swift's July 3, 2018 clinical notes, Dr. Swift conducted an overall evaluation of Mr. Scott, during which he performed a physical examination and reviewed Mr. Scott's history and medical records. Dr. Swift's records indicate Mr. Scott's chief complaints related to the claimed chemical exposure were daily headaches regular medication, dizziness, and the inability to tolerate heat, causing headaches and dizziness with any heat exposure. After reviewing Mr. Scott's history, medical records, and conducting an examination of Mr. Scott, Dr. Swift concluded that it was "difficult to say one way or the other" whether Mr. Scott's headaches and dizziness were caused by a chemical exposure as there was no agent identified in the documents he was given to review. He further noted that Mr. Scott's pattern of intractable headaches for the past fifteen months with minimal improvement did not fit a toxicological pattern, that is, a dose response relationship in which one would expect diminution of symptoms once removed from exposure. Dr. Swift concluded that at the present time, he was unable to relate Mr. Scott's current complaints to his reported exposure incident at a level of probability of more likely than not. He indicated that Mr. Smith provided him with an incident report of a release at the Dow facility occurring on March 17, 2017, and that he would try to get more information as to the exact nature of the possible chemical in question and inquire whether the reported release from that date was from a unit near the area where Mr. Scott's claimed exposure occurred.

On October 18, 2018, Mr. Scott's attorney withdrew from the case. Following that date, a series of letters written by Mr. Scott were filed into the record in the OWC, some of which were written to the Workers' Compensation

4

Judge (WCJ) assigned to the case. In the letters, Mr. Scott offered details surrounding his claimed chemical exposure. The record also contains two pictures of numerous medication bottles. Additionally, Mr. Scott submitted the Louisiana Department of Environmental Quality Incident Report referred to by Dr. Swift in his clinic notes. This report detailed an incident at the Dow Chemical facility on March 17, 2017 at 12:41, described as a mild plant upset at a hydrocarbons plant, during which a valve failure caused the plant to vent to a "BH" flare. The report stated that there was no chemical release and everything went to the flare. Mr. Scott also filed into the record the deposition testimony of Dr. Gawronski and a list of witnesses.

On December 13, 2018, a hearing on Performance's motion for summary judgment was held, during which Mr. Scott represented himself. Performance urged that Mr. Scott could not prove the causation element of his claim. Performance offered the exhibits originally attached to its motion for summary into evidence. The WCJ went over the documents filed by Mr. Scott into the record to ensure that due consideration was being given to any evidence Mr. Scott may have to support his claim. The WCJ specifically inquired whether Mr. Scott had any medical records to support his claim; Mr. Scott replied that he did but that the doctor did not want to put his job at risk. Mr. Scott did not offer any medical evidence in support of his claim that he suffered injuries as a result of a work-place chemical exposure occurring during the course and scope of his employment with Performance.

At the conclusion of the hearing, the WCJ granted Performance's motion for summary judgment. A judgment was signed on January 10, 2019, granting the motion for summary judgment and dismissing all of Mr. Scott's claims with prejudice. This appeal, taken by Mr. Scott, followed.

5

## SUMMARY JUDGMENT

The determination of motions for summary judgment in the OWC is governed by the same standards used in ordinary civil actions. **Wainwright v. American Multi-Cinema, Inc.,** 2019-0019 (La. App. 1st Cir. 9/27/19), 291 So.3d 1080, 1082. An appellate court reviews a WCJ's decision on a motion for summary judgment *de novo*, using the same criteria that governs the WCJ's consideration of whether summary judgment is appropriate. **Id**. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966A(3).

The Code of Civil Procedure places the burden of proof on the party filing a motion for summary judgment. La. C.C.P. art. 966D(1). The mover can meet this burden by filing supporting documentary evidence consisting of pleadings, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions with the motion for summary judgment. La. C.C.P. art. 966A(4). The mover's supporting documents must prove the essential facts necessary to carry the mover's burden. Thus, in deciding a summary judgment motion, it must first be determined whether the supporting documents presented by the mover are sufficient to resolve all material fact issues. **Van Cleave v. Temple,** 2018-1353 (La. App. 1st Cir. 5/31/19), 278 So.3d 1005, 1011; **Crockerham v. Louisiana Medical Mutual Insurance Company,** 2017-1590 (La. App. 1st Cir. 6/21/18), 255 So.3d 604, 608.

Once the mover properly establishes the material facts by its supporting documents, the mover does not have to negate all of the essential elements of the adverse party's claims, actions, or defenses. La. C.C.P. art. 966D(1). The moving

6

party must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966D(1). The burden then shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966D(1). If the non-moving party fails to produce sufficient factual support in its opposition which proves the existence of a genuine issue of material fact, Article 966D(1) mandates the granting of the motion for summary judgment. **Babin v. Winn-Dixie Louisiana, Inc.,** 2000-0078 (La. 6/30/00), 764 So.2d 37, 40.

In order to recover workers' compensation benefits, an employee must prove: (1) a work-related accident; (2) the accident caused an injury, and (3) the injury caused a disability. La. R.S. 23:1031A; **Roussell v. St. Tammany Parish School Board,** 2004-2622 (La. App. 1st Cir. 8/23/06), 943 So.2d 449, 457. The employee must also establish a causal connection between the accident and the resulting disability by a preponderance of the evidence. **Welborn v. Thompson Construction,** 2015-1217 (La. App. 1st Cir. 2/26/16), 191 So.3d 1086, 1088. Causation is not necessarily and exclusively a medical conclusion, but is usually the ultimate fact to be found by the factfinder based on all credible evidence. **Id.**

In this case, Performance supported its motion with evidence showing that two of Mr. Scott's treating physicians were unable to relate Mr. Scott's alleged injuries to the alleged workplace exposure. Thus, Performance satisfied its burden on the motion by demonstrating the absence of factual support for the causation element of Mr. Scott's claim. The burden then shifted to Mr. Scott to produce factual support to establish the existence of a genuine issue of material fact on the causation element of his claim. The evidence offered by Mr. Scott in opposition

to the motion did not establish that he could demonstrate a causal connection between the alleged exposure incident and his claimed long-term disability with any reasonable probability. Dr. Gawronski's deposition testimony establishes that he lacked the expertise necessary to relate Mr. Scott's claimed chemical exposure to Mr. Scott's complaints of head and neck pain. Further, while there was evidence of an "incident" at the Dow facility on the day in question, the incident report states there was no release of any chemical into the atmosphere, and there is no evidence relating that incident to the time and place of Mr. Scott's claimed exposure.

Following our *de novo* review of the evidence, we conclude that Mr. Scott failed to produce sufficient factual support demonstrating the existence of a genuine issue of material fact on the question of whether his claimed injuries were caused by a chemical exposure at the Dow facility. Therefore, summary judgment in favor of Performance was mandated by the Code of Civil Procedure, and the trial court correctly granted Performance's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the judgment appealed from is affirmed. All costs of this appeal are assessed to appellant, Kevin R. Scott, Sr.

**AFFIRMED.**