984 So.2d 31 (2007)
Glinda JENNINGS
v.
RYAN'S FAMILY STEAK HOUSE.
No. 2007 CA 0372.
Court of Appeal of Louisiana, First Circuit.
November 2, 2007.
*34 Andrew W. Horstmyer, Rebecca M. Urrutia, Diamondhead, MS, for 2nd Appellant Glinda Jennings.
Pierre M. Legrand, Metairie, LA, for 1st Appellant Ryan's Family Steak House.
Joseph H. Jolissaint, Baton Rouge, LA, for Intervenor.
Before PARRO, KUHN and DOWNING, JJ.
DOWNING, J.
Ryan's Family Steak House (Ryan's) appeals a judgment awarding Glinda Jennings workers' compensation indemnity benefits, medical treatment, future medical expenses, penalties and attorney fees. It also appeals the workers' compensation judge's (WCJ) failure to find that Ms. Jennings committed fraud.
Ms. Jennings filed a cross-appeal alleging penalty and attorney fee inadequacies. She also answered the appeal seeking additional attorney fees for defending this appeal.
For the following reasons we affirm the judgment in part, amend the judgment in part, reverse the judgment in part, and affirm as amended. Ms. Jennings is also awarded $2,000.00 in additional attorney fees for the work required in protecting her rights in this appeal.

FACTS AND PROCEDURAL HISTORY
On March 14, 2005, while working as a cook at Ryan's, Ms. Jennings fell as she carried a tray of cheese.[1] On the following day she went to the emergency room for back and neck pain. She later selected Dr. Michael LaSalle as her treating orthopedist. He referred her to the Morella Physical Therapy Clinic for heat therapy with electrogalvanic stimulation. In a letter written May 25, 2005, Dr. Morella told Dr. LaSalle that after ten sessions of therapy, Ms. Jennings showed no improvement. On June 1, 2005, after nearly three months of treatment, Dr. LaSalle noted in Ms. Jennings' chart that her pain was out of proportion with his examination findings and the imaging studies conducted on May 2, 2005. Dr. LaSalle, however, still referred Ms. Jennings to a neurologist, Dr. Edward Haight, for a pain management evaluation.
On June 15, 2005, Dr. Haight[2] ordered a cervical MRI. This test showed central *35 protrusions at C3-4 and C4-5. On July 13, 2005, Dr. Haight performed an electromyography (EMG) on her lower extremities. This test showed mild right L4 and left S1 radiculopathies. On July 21, 2005, Dr. Haight reported that the EMG indicated mild right C5 radiculopathy in her upper extremities. Dr. Haight's August 25, 2005 report states that Ms. Jennings has (1) intractable low back pain with nerve root injury at the left SI and right L4 levels consistent with stretch injury by EMG nerve conduction studies; (2) intractable neck pain with cervical disc displacement and electrophysiologic evidence of right C5 radiculopathy; (3) intractable cervicogenic headache; (4) worsening depression due to chronic pain; and (5) secondary insomnia. He also stated he planned to send Ms. Jennings back to Dr. LaSalle to see if surgical management was indicated for her neck pain. Dr. LaSalle was sent a copy of the testing results.
Ms. Jennings returned to see Dr. LaSalle on September 9, 2005. He recorded that she was still complaining about spinal pain, but in his opinion her herniated disc did not show spinal cord or nerve root impingement. Dr. LaSalle offered Ms. Jennings steroid epidural injections, which she declined. He noted that she intended to seek a second opinion. On September 26, 2005, Dr. LaSalle released Ms. Jennings to return to full duty work. The following notation was made in her medical record:
She returns today walking in a bent over position again . . . however while walking down the hallway was standing straight up. She is complaining of continued lower back pain, neck pain, and pain all over her entire [body]. She underwent an MRI of her cervical spine recently, which shows a central herniated disc at C4-5 with no spinal cord impingement, nor nerve root impingement. She has no surgical indications. I have discussed epidural steroid injections with her. She did not wish that. She is going to seek a second opinion to evaluate for surgery. I have nothing further to offer her.
Ms. Jennings medical records show that she had a follow-up visit with Dr. Haight the next day, September 27, 2005. Dr. Haight recorded that she denies any improvement since the last visit; she remains with neck pain radiating to the shoulders bilaterally and into the arms. He also said that she stopped her chiropractic treatment because it had no effect and that she will no longer be seeing Dr. LaSalle and is seeking another surgical opinion.
Before Ms. Jennings could get a second opinion, the insurer's adjuster terminated Ms. Jennings' benefits on September 26, 2005, based on Dr. LaSalle's report and his release to return to full-duty work. The adjuster did not consult Dr. Haight or review his evaluation before terminating Ms. Jennings' benefits. However, the adjuster must have communicated with Dr. Haight somehow, because on October 11, 2005, Dr. Haight made a notation that "[T]he workers' compensation adjuster is denying any and all treatment concerning this patient due to a workers' comp. fraud case under investigation."
When Ms. Jennings requested a second opinion for a neurosurgical evaluation, the adjuster refused. Ms. Jennings filed suit; the matter was tried on September 1, 2006.
After a trial on the merits the WCJ found that Ms. Jennings did injure her neck, back, left arm, elbow, left hip, and back of the head from a fall at work. She also found that Ms. Jennings was entitled to temporary total disability (TTD) benefits, and the reinstatement of indemnity benefits from the date benefits were terminated, *36 September 26, 2005. The WCJ also found that Ms. Jennings was entitled to further medical treatment including a neurosurgical evaluation and to future treatment with a neurosurgeon if deemed necessary by that evaluation.
The WCJ further found that Ryan's failed to prove that Ms. Jennings' behavior rose to the level of fraud. The WCJ found that La. R.S. 23:1208, the forfeiture statute, was not violated. The WCJ commented that a leading neuropsychiatrist, Dr. Kevin Bianchinni, has done research on this subject. She then assessed Ryan's with $5,000.00 in penalties and $5,000.00 in attorney fees. The penalty award consisted of $1,000.00 for prematurely terminating Ms. Jennings indemnity benefits, $1,000.00 for prematurely terminating medical benefits, and $3,000.00 for the late payments of TTD benefits while the claim was still considered legitimate by the employer.[3]
Judgment was rendered accordingly and both sides appealed.
As summarized below, Ryan's alleges that the WCJ erred as follows:
1. In admitting portions of Dr. LaSalle's and the adjuster's speculative testimony;
2. In relying on Dr. Kevin Bianchinni's opinions not admitted into evidence;
3. In failing to find a violation of La. R.S. 23:1208;
4. In awarding any benefits;
5. In ruling that claimant was entitled to a neurosurgical exam;
6. In awarding future medical benefits; and
7. In awarding penalties and attorney fees for the termination of benefits as well as for matters that were not at issue at the trial.
In Ms. Jennings' cross-appeal she argues that her penalty and attorney fee awards were inadequate. In her answer to appeal she seeks additional attorney fees for defending this appeal.

CLAIMANT'S ENTITLEMENT TO BENEFITS
In its fourth assignment of error, Ryan's alleges that the WCJ erred in awarding TTD benefits to Ms. Jennings. Ryan's contends that Ms. Jennings' story was so implausible and inconsistent that the WCJ erred in finding that she proved her entitlement to benefits. Specifically, it argues that Ms. Jennings' own treating orthopedic surgeon, Dr. LaSalle, suspected her of malingering and thought her complaints were out of proportion to his findings. Ryan's also argues that Ms. Jennings reported excessive and extreme neck and low back pain to Dr. Haight. However, she did not report neck pain to Dr. LaSalle except on her last visit. Furthermore, it argues that there is insufficient medical evidence showing that Ms. Jennings is disabled to such an extent that she is unable to perform any kind of work.
The WCJ determined, however, that the MRI report and Ms. Jennings' own testimony were sufficient to prove that she could not resume work and was thus entitled to TTD benefits.
Pursuant to La.R.S. 23:1221(1)(c), a claimant has the burden of proving entitlement to TTD by clear and convincing evidence. Clear and convincing proof has been defined as an intermediate standard falling somewhere between the ordinary "preponderance of the evidence" civil standard and the "beyond reasonable doubt" *37 criminal standard. Roussell v. St. Tammany Parish School Bd., 04-2622, p. 10 (La.App. 1 Cir. 8/23/06), 943 So.2d 449, 457-458. To meet this standard, the claimant must provide objective, expert testimony as to the medical condition, symptoms, pain, and treatment, in addition to personal testimony. Id.
The record reflects that Ms. Jennings reported back and neck pain to Dr. LaSalle. She testified that after the accident her back hurt all the time, every day. She said that on a scale of one to ten, her pain was a ten. Even though Dr. LaSalle suspected she was exaggerating her symptoms, he still referred her to Dr. Edward Haight, a pain management neurologist. Dr. Haight's MRI showed disc abnormalities.[4] Accordingly, Ms. Jennings' personal testimony along with information in Dr. Haight's medical report are sufficient to meet the standard set in Roussell and the WCJ did not err in finding Ms. Jennings was entitled to TTD benefits.
Ryan's next contends that while Ms. Jennings may indeed have bulging discs, her fall while working did not cause them. Ryan's introduced medical records going back several years showing that Ms. Jennings was complaining about back pain long before she went to work for Ryan's. Ryan's argues that these records prove that Ms. Jennings had a long history of back pain that was not caused by the fall at work.
After reviewing the record, we recognize that Ms. Jennings had myriad complaints prior to the accident. Her voluminous medical records, however, do not show serious spinal complaints.
The WCJ found that Ms. Jennings is presently physically unable to return to work. There is sufficient evidence in the record that her "back and neck" pains manifested immediately after her fall at Ryan's. Based on our review of the record, we conclude that the WCJ did not err in finding that Ms. Jennings met her burden of proof by clear and convincing evidence that she is temporarily totally disabled and entitled to TTD benefits. Therefore, this assignment of error is without merit.

EVIDENTIARY RULINGS
Ryan's alleges in its first assignment of error that the WCJ erred in admitting or relying on certain portions of testimony and medical evidence. Ryan's argues that some of the testimony admitted into evidence was irrelevant and speculative. Specifically, Ryan's contends that portions of Dr. LaSalle's deposition testimony concerning Ms. Jennings' back pain were speculative. The contested questions and answers read as follows:

Question: And of course you have patients where they might have the same objective testing; show the same injury; but, each one reported a different level of pain to you; is that correct?

Answer: Yes.

Question: And in a hypothetical situation, you can have two different people report two different levels of pain; and, with the same objective medical tests with that both being accurate and not malingering, is that correct?

Answer: Correct.

Question: Okay. But, . . . theoretically, if you've seen it before, is it possible that *38 she had a bulge in her disc that had not yet bulged enough to press the thecal sac, when you first started to see her in . . .
(Ryan's objected because question was speculative.)

Question: Then, hypothetically, could it be possible for someone to present to you with injuries and that later on the disc protrusion then reveal itself in the form of pain?
Ryan's stated, "SAME OBJECTION."

Answer: It's possible.
* * *

Question: Okay, If Ms. Jennings reported the injury to her neck as early as March 2005, which I believe is the date of the  of the  let's see  is that the date of her accident? If she on the date of  or the day after her accident  reported to the Emergency Room that she had neck pain, would you then have a difference of opinion as to whether it may be related to her fall?

Answer: I think it could be caused by a fall.

Question: Okay. So based on the fact that she did on that day  the day after the accident  report neck [pain], is it possible that that neck pain could have then resulted in the bulging disc that you saw her for September 9th, 2005.
Ryan's said, "SAME OBJECTION; SPECULATIVE."

Answer: Yes.
Ryan's also argues that their own adjuster's testimony regarding these same questions should have been excluded since they were also speculative. The WCJ overruled the objection and stated that she was not strictly bound by the rules of evidence. She stated that if she considered the testimony at all, it would go to the weight of the evidence.
The court in Chaisson v. Cajun Bag & Supply Co, 97-1225, pp. 9-10 (La.3/4/98), 708 So.2d 375, 381, explained that La.R.S. 23:1317(A) mandates that factual findings must be based on "competent evidence." However, the express language in La.R.S. 23:1317 states that hearing officers are "not bound by the technical rules of evidence." In other words, the hearing officer has the discretion to admit evidence that would otherwise be inadmissible under the La.Code of Evidence. Chaisson, 708 So.2d at 381. This relaxed standard for the admissibility of evidence is the general rule in proceedings before administrative agencies. Id. Thus, if the hearing officer's factual findings are reasonably supported by competent evidence, then the reviewing court must affirm. Id.
Here, the WCJ admitted Dr. LaSalle's deposition in its entirety. Dr. LaSalle was Ms. Jennings' treating physician. The WCJ said when she overruled Ryan's objection, she would allow in the deposition but it would go to the weight of the evidence. Our review of the record indicates that the WCJ made its determination based upon competent evidence. There is nothing to indicate that the WCJ relied on portions of Dr. LaSalle's or, for that matter, the adjuster's supposedly speculative testimony. This assignment of error is without merit.
In Ryan's second assignment of error it argues that the WCJ referred to a study she recently read by neuro-psychiatrist, Dr. Kevin Bianchinni, about the mind-set of people who have been characterized as malingerers. Ryan's contends that this study was not admitted into evidence and should not have been considered in making determinations about whether Ms. Jennings committed fraud. Citing Welch v. Robert Campbell, Inc., 316 So.2d 822 (La.App. 1 Cir.1975), it argues that a court cannot rely on unintroduced *39 evidence to form a basis for its decision, because the opposing counsel has had neither an opportunity to rebut or explain the testimony nor knowledge that the evidence will be used against him. Ryan's contends that the WCJ erred when it relied on Dr. Bianchinni's study.
Ryan's contention that evidence outside of the record cannot be relied upon to form a basis for the court's decision is a true statement of law. There is, however, no indication that the WCJ relied on Dr. Bianchinni's research to make determinations or conclusions about this case.
According to La.C.E. art. 103 A, an error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. Thus, the proper inquiry for determining whether a party was prejudiced by a court's alleged erroneous ruling is whether the alleged error, when compared to the entire record, had a substantial effect on the outcome of the case. Arabie Bros. Trucking Co. v. Gautreaux, 03-0120, p. 13 (La.App. 1 Cir. 8/4/04), 880 So.2d 932, 942. The party alleging prejudice by the evidentiary ruling of the court bears the burden of so proving. Emery v. Owens-Corp., 00-2144, p. 7 (La.App. 1 Cir. 11/9/01), 813 So.2d 441, 449.
Before the WCJ ruled on whether Ms. Jennings' conduct was fraudulent, she said that, "malingering does not always mean fraud." This was stated as a fact garnered from the WCJ's personal knowledge and common sense. She then commented that Dr. Bianchinni's study showed that some people in the malingering category suffer from depression, which tends to make them exaggerate their medical condition due to a heightened concentration on themselves. Dr. Bianchinni had concluded that this is not always fraud since these persons sincerely believe they have increased pain. These statements appear to have been made to explain, reinforce, bolster or substantiate her premise for these conclusions. Ryan's has failed to prove that they were prejudiced by these comments.
After a careful review of the record, we conclude that the statements regarding the Bianchinni study were harmless remarks used to explain her position about her ruling on the issue of fraud. There is no indication that the WCJ formed an opinion about whether Ms. Jennings committed fraud based on Dr. Bianchinni's research. Further, there is ample evidence to support the conclusion that Ms. Jennings did not commit fraud as defined in La.R.S. 23:1208. Accordingly, these assignments of error are without merit.

CLAIMANT'S ENTITLEMENT TO A NEUROSURGICAL EVALUATION AND FUTURE TREATMENT IF NECESSARY
Ryan's argues in its fifth assignment of error that La. R.S. 23:1121(B)(1) provides that the employee can select one treating physician in any field or specialty. Ms. Jennings selected Dr. Michael LaSalle. Ryan's argues that she also saw Dr. Haight, but now wants yet another evaluation for surgery. Ryan's contends that Dr. LaSalle has rendered an opinion that Ms. Jennings only needed epidural steroid injections for her pain. Ryan's contends that Dr. LaSalle has not rendered an opinion that Ms. Jennings' needs a second surgical evaluation.
We disagree. La.R.S. 23:1203 requires the employer to furnish all medical treatment deemed necessary to the injured employee. This includes palliative treatment necessary to relieve an employee of the pain she suffers as a result of her disability, as well as that designed to cure her work-related injury. Scott v. Piccadilly *40 Cafeteria, 97-1584, p. 4 (La.App. 3 Cir. 4/1/98), 708 So.2d 1296, 1299. A WCJ's finding as to whether a particular medical treatment is necessary is factual in nature and will not be disturbed on review in the absence of manifest error. See Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733.
Dr. LaSalle testified under oath that he suspected that Ms. Jennings was malingering. However, when asked again if he thought she should be evaluated by somebody else, he replied that it was a good idea for her to be evaluated by a neurosurgeon. Dr. LaSalle has made it very clear that he has nothing more to offer Ms. Jennings. The WCJ found as a fact that Dr. LaSalle based his medical opinion on less than complete information.
The statute requires an employer to furnish all medical treatment deemed necessary to the injured employee. As discussed above, the WCJ concluded that Ms. Jennings is presently disabled. It stands to reason that she should be allowed to see a physician who can perhaps find a solution to remedy her disability. Furthermore, when Dr. LaSalle was asked, "would it be reasonable for her to have an evaluation from a neurosurgeon to rule out any need for further treatment on the neck," he answered, "yes." Moreover, if Ryan's is not happy with the evaluation, it can order an independent medical examination. Thus, this assignment of error is without merit.
Regarding the sixth assignment of error, Ryan's alleges that the WCJ erred in finding Ms. Jennings was entitled to further treatment by a neurosurgeon if warranted. Ryan's argues that there is nothing in the law allowing the award of future medical treatment. We agree.
The court in Prevost v. Jobbers Oil Transp. Co., 95-0224 (La.App. 1 Cir. 10/6/95), 665 So.2d 400, 404, held that liability for medical expenses arises only as the expenses are incurred. A plaintiff is not entitled to an award for future medical expenses, but the right to claim such expenses is always reserved to the plaintiff. In Prevost, this court reversed the portion of the judgment making such awards, because the award of future medical treatment was not necessary. Therefore, the portion of the judgment awarding future medical treatment is premature and the claim for such expenses is reserved for Ms. Jennings when appropriate. Accordingly this assignment of error has merit. The judgment awarding future medical expenses is hereby reversed.

PENALTIES AND ATTORNEY FEES
Ryan's paid Ms. Jennings benefits from the time she was injured until September 26, 2005, when Dr. LaSalle informed Ryan's that he suspected her of malingering. Ryan's then terminated her benefits and reported Dr. LaSalle's suspicions to Dr. Haight.
The WCJ, however, did not find Ms. Jennings guilty of fraud and assessed $5,000 in penalties, as well as $5,000.00 in attorney fees. This award includes a $1,000.00 penalty for prematurely terminating indemnity benefits and a $1,000.00 penalty for prematurely terminating medical benefits. In addition, Ryan's was assessed with a $3,000.00 penalty for not timely paying TTD benefits from March 15, 2005, to March 21, 2005, and from April 12, 2005, to June 6, 2005.
The statutes providing for penalties and attorney fees are penal in nature and must be strictly construed. Patterson v. Long, 96-0191, p. 15 (La.App. 1 Cir. 11/8/96), 682 So.2d 1327, 1336.
Louisiana Revised Statute 23:1201(1) provides, in pertinent part:

*41 Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims. The provisions as set forth in R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions as set forth in R.S. 22:658(C) shall be applicable to claims arising under this chapter.
La.R.S.23:1201(J)
Notwithstanding the fact that more than one violation in this Section which provides for an award of attorney fees may be applicable, only one reasonable attorney fee may be awarded against the employer or insurer in connection with any hearing on the merits of any disputed claim filed pursuant to this Section, and an award of such single attorney fee shall be res judicata as to any and all conduct for which penalties may be imposed under this Section which precedes the date of the hearing.
Here, Ryan's was aware that Ms. Jennings had been referred to Dr. Haight. Ryan's should have investigated Dr. Haight's test results and prognosis to determine if Ms. Jennings needed another opinion and continued benefits. Instead, it simply terminated benefits after she refused Dr. LaSalle's offer of epidural steroid injections. Her benefits were terminated despite the fact that she was still in pain and despite the fact that Dr. Haight had medical evidence supporting her possible need for surgery. After a thorough review and evaluation of the record, we conclude that the WCJ did not err in implicitly finding that Ryan's actions were arbitrary and capricious. Thus, the WCJ did not err in imposing penalties and attorney fees under La. R.S. 23:1201(I) for arbitrarily and capriciously discontinuing benefits before further investigating the medical evidence from Ms. Jennings' other physicians. This portion of the assignment of error is without merit.
Ryan's next argues that there was no evidence proving that the benefit payments were late or that the matter was properly before the court.
We agree that the matter was not properly before the court. The WCJ specifically asked Ms. Jennings' attorney if the termination of benefits and the discontinuance of medical and indemnity benefits were the only issues to be addressed at trial. He answered in the affirmative. Nor is there evidence that the pleadings were expanded at trial concerning the late payments.
After a thorough review and evaluation of the record, we conclude that the WCJ erred in imposing penalties for not timely paying TTD benefits because the matter was not properly before the court. Accordingly, the $3,000.00 awarded to Ms. Jennings for the purported late payments is hereby reversed. This portion of the assignment of error has merit.

REJECTION OF RYAN'S La.R.S. 23:1208 CLAIM
In Ryan's third assignment of error it contends that the WCJ erred in finding that Ms. Jennings did not violate La.R.S. 23:1208. Pursuant to this statute, a claimant's benefits are forfeited when: (1) the claimant makes a false statement or representation; (2) the false statement or representation was willfully made; and (3) it was made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Construction Co., 94-2708 *42 (La.9/5/95), 660 So.2d 7, 12; see also, Atwell v. First General Services, 06-0392, p. 6 (La.App. 1 Cir. 12/28/06), 951 So.2d 348, 353, writ denied, 07-0126 (La.3/16/07), 952 So.2d 699. The issue of whether an employee forfeited her workers' compensation benefits is one of fact, which is not to be reversed on appeal absent manifest error. Scott v. Wal-Mart Stores, Inc., 03-0858, p. 11 (La.App. 1 Cir. 2/23/04), 873 So.2d 664, 672.
In this case, there is no direct evidence of fraud, such as might be revealed on a surveillance tape. The sole evidence Ryan's has offered is Dr. LaSalle's suspicion that Ms. Jennings was exaggerating her symptoms. Based on our review of the record, we conclude that the record supports the WCJ's determination that Ryan's did not meet its burden of proving that Ms. Jennings committed fraud. The WCJ heard the characterization of the evidence from both sides. The WCJ rejected Ryan's characterization and its view of what the evidence established.
Where there are two permissible views of the evidence, the choice between them cannot be manifestly erroneous. Stobart v. State, Through Dept. of Transp. & Dev., 617 So.2d 880, 883 (La. 1993). We thus conclude that the WCJ did not err in finding that Ms. Jennings did not violate La.R.S. 23:1208. Accordingly, this assignment of error is without merit.

ANSWER TO APPEAL
Finally, Ms. Jennings' answer to the appeal seeks additional attorney fees for the time spent on this appeal. Generally, an increase in attorney fees should be awarded when a party who was awarded attorney fees in the trial court is forced to and successfully defends an appeal. Bergeron v. Watkins, 98-0717, p. 10 (La.App. 1 Cir. 3/2/99), 731 So.2d 399, 405. After a review of the record and the work done on appeal by counsel for Ms. Jennings, we find that an additional award of $2,000 in attorney fees is reasonable. We therefore will award Ms. Jennings an additional $2,000 as attorney fees for successfully defending this appeal.

MS. JENNINGS' CROSS-APPEAL
Ms. Jennings alleges that the WCJ erred in only awarding $1,000.00 for each separate violation of La. R.S. 23:1201(I), instead of $2,000 for each violation.
The WCJ assessed Ryan's with $5,000.00 in penalties. Her written reasons recite that the penalty was assessed as follows:
$1,000.00 for prematurely terminating indemnity benefits;
$1,000.00 for prematurely terminating medical benefits; and
$3,000.00 for failing to pay TTD during the time period of 4/12/05 to 6/6/05, and from 3/15/05 to 3/21/05.
Since, as discussed above, we have concluded that the $3,000.00 penalty for failing to timely pay benefits during certain time periods was improperly awarded, this portion of the judgment is reversed.
We agree, however, that the WCJ erred in only awarding $1,000.00 for prematurely terminating indemnity benefits and $1,000.00 for prematurely terminating medical benefits. La.R.S. 23:1201(1) and (J) allow for penalties and attorney fees when the discontinuance of claim payments was arbitrary and capricious. Accordingly, we raise that portion of the judgment to $2,000.00 for each count. The total penalty award is amended to $4,000.00.
The judgment will be amended and rendered accordingly.

*43 DECREE
We reverse the $3,000.00 penalty for the failure to timely pay disability benefits. The judgment awarding Ms. Jennings' future medical expenses is reversed. In accordance with La. R.S. 23:1201(I), the $1,000.00 penalty award for the arbitrary and capricious termination of indemnity benefits is amended to $2,000.00. And the $1,000.00 penalty award for the arbitrary and capricious termination of medical benefits is hereby amended to $2,000.00. We affirm these two awards as amended. In all other respects, the judgment is affirmed. Additionally, we order, adjudge and decree that Ms. Jennings' attorney be awarded an additional $2,000.00 for protecting her rights for this appeal. Costs are assessed against the employer, Ryan's Family Steak House.
REVERSED IN PART, AFFIRMED AS AMENDED IN PART, AND RENDERED.
KUHN, J., dissents and assigns reasons.
KUHN, J., dissenting.
I disagree with the majority's determination that "there is no indication . . . the WCJ relied on Dr. Bianchinni's research to make determinations or conclusions about this case." In articulating her reasons for rejecting Ryan's Family Steak House's (Ryan's) claim for reimbursement under La. R.S. 23:1208, the WCJ stated:
[M]alingering does not always mean fraud. Dr. Kevin Bianchinni, a neuropsychiatrist, has done research that differentiates different types of people in the malingering category. Those who suffer from depression tend to exaggerate their medical condition due to their heightened concentration on themselves. However, Dr. Bianchinni feels these people are not fraudulent, but sincerely believe they have increased pain and genuinely feel increased pain.
The majority correctly points out that "[t]hese statements appear to have been made to explain, bolster or substantiate [the WCJ's] premise for these facts." But the majority is not free to explain away the WCJ's reliance on an opinion not admitted into evidence. Her reliance on that opinion interdicted the fact finding process.
Clearly, Ryan's was prejudiced by an opinion cited by the WCJ in formulating the conclusion that Jennings had not committed fraud. Ryan's was neither permitted to cross-examine that witness nor to present contrary expert evidence. It was precluded from the opportunity to object to, rebut, or explain the testimony. See Welch v. Robert Campbell, Inc., 316 So.2d 822, 826 (La.App. 1st Cir.1975). Ryan's had no knowledge that the opinion would be used against it, the context in which it would be used, or the opportunity to engage in legal confrontation with that which was ultimately used to decide the claim against it. Id.
In light of the WCJ's prejudicial error, I would conduct a de novo review of the evidence. Accordingly, I dissent.
NOTES
[1] Ms. Jennings had only been employed about one week when she sustained the injury.
[2] Dr. Haight noted that Ms. Jennings was seeing him for a work-related injury.
[3] This penalty assessment was for TTD owed during the time periods of 4/12/05 to 6/6/05 (53 days), and 3/15/05 to 3/21/05 (5 days); they were paid in full on 6/3/05.
[4] The MRI showed (1) the central protrusion indents the thecal sac at C3-4 but does not produce any central canal stenosis; (2) a central protrusion measures "2mm in AP dimension X 7 mm" in lateral dimension; (3) this results in indentation of the thecal sac at C4-5, but no central canal stenosis, and mild anterior spondylosis with a noncompressive anterior protrusion at C5-6.