# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-1148


JOHNETTE WILZCEWSKI[1]

VERSUS

BROOKSHIRE GROCERY COMPANY


************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DIST. 02
PARISH OF RAPIDES, NO. 08-03619
HONORABLE JAMES L. BRADDOCK
WORKERS' COMPENSATION JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of John D. Saunders, Oswald A. Decuir and, Jimmie C. Peters, Judges.


**AFFIRMED AS AMENDED AND RENDERED.**


**Joe Payne Williams**
**Williams Family Law Firm, LLC**
**P. O. Box 15**
**Natchitoches, LA 71458-0015**
**(318) 352-6695**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Johnette Wilczewski**

---

[1]The proper spelling of "Wilzcewski" is "Wilczewski."

**Dale G. Cox**
**Bradley Murchison Kelly & Shea LLC**
**401 Edwards Street**
**Suite 1000**
**Shreveport, LA 71101-5529**
**(318) 227-1131**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Brookshire Grocery Company**

PETERS, J.

In this workers' compensation matter, the defendant, Brookshire Grocery Company (Brookshire), appeals the workers' compensation judge's (WCJ's) denial of its La.R.S. 23:1208 fraud defense and its judgment in favor of the plaintiff, Johnette Wilczewski, reinstating her weekly indemnity benefits, awarding her the implementation of a permanent spinal cord stimulator, and award her of statutory penalties and attorney fees. Mrs. Wilczewski answered the appeal seeking additional statutory penalties and attorney fees. For the following reasons, we affirm the WCJ's judgment as amended, and we render judgment awarding Mrs. Wilczewski additional statutory penalties and attorney fees for work performed by her counsel on appeal.

## DISCUSSION OF THE RECORD

The accident giving rise to this litigation occurred on December 22, 2005, and this appeal marks the second time this matter has been before us. The first review by this court occurred as a result of a WCJ decision approving the use by Mrs. Wilczewski of a spinal cord stimulator for a nine-day trial, approving her participation in a behavioral pain management program, and awarding her statutory penalties and attorney fees for her employer's failure to approve these treatments. The WCJ rendered this judgment on April 2, 2008, and Brookshire timely appealed. This court affirmed that judgment and awarded additional attorney fees to Mrs. Wilczewski for work performed by her counsel on appeal. *Wilczewski v. Brookshire Grocery Co.*, 08-718 (La.App. 3 Cir. 1/28/09), 2 So.3d 1214, *writ denied*, 09-456 (La. 4/13/09), 5 So.3d 170.

Rather than attempt to rewrite the facts and procedural history that led up to the April 2, 2008 judgment, we adopt the prior opinion's recitation of those facts and procedural history as our own:

On December 22, 2005, Johnette Wilczewski (Wilczewski) claimed that she injured her mid-back when she lifted a case of hams while working for Brookshire Grocery Company (Brookshire). Unloading the boxes of hams, which weighed approximately fifty to sixty pounds, was a normal part of her regular duties in the meat market department for Brookshire.

Within twenty-four hours, Wilczewski saw her family physician, Dr. James Knecht, complaining of mid-back pain. Dr. Knecht's nurse took a history from Wilczewski wherein she indicated that she has suffered from back pain for about the last twenty-four hours, and, further, that she has suffered pain from her left arm, wrapping around her back for the last month. Dr. Knecht testified that the wrapping-around pain was not related to the work incident, but the posterior mid-back pain was due to her accident citing objective findings of muscle spasm.

Dr. Knecht continued to see Wilczewski into January of 2006. He referred her for physical therapy where a TENS unit was prescribed to help with the pain in her thoracic spine. Due to continued pain, Dr. Knecht referred her to an orthopedic specialist, Dr. Phillip Bacilla.

Dr. Bacilla ordered an MRI of Wilczewski's thoracic and lumbar spine as well as a bone scan. He interpreted an MRI and bone scan of Wilczewski's thoracic spine to be normal, but noted the MRI of the lumbar spine showed a bulging disc at L2-3 and L3-4. Dr. Bacilla felt that the bulges could be causing some of the pain in her upper lumbar region, but did not explain the pain in the thoracic region that radiates to the chest. He then referred her to Dr. Melanie Firmin, a pain management specialist, with Wilczewski to return to his office after seeing Dr. Firmin. Dr. Bacilla did not see Wilczewski again until February 2007, wherein he suggested she be seen by a neurosurgeon.

Dr. Firmin, a board certified anesthesiologist and pain management specialist, began treatment of Wilczewski in April of 2006 with various types of neuromodulator and anti-depressant medication in an attempt to discover the source of the thoracic pain. Dr. Firmin's treatment progressed to a thoracic spine epidural steroid injection. That injection temporarily relieved Wilczewski's pain, and also showed an immediate change in the discoloration pattern on the thoracic area of her spine. This lead Dr. Firmin to believe that a trial of a spinal cord stimulator would assist in both diagnosing the actual problem that Wilczewski had and in determining if a permanent spinal cord stimulator would be of any benefit. Given the unusual nature of this potential diagnosis, Dr. Firmin sought a second opinion of her idea to use the trial spinal cord stimulator from Dr. Steven A. Staires, an interventional pain management specialist.

Dr. Staires saw Wilczewski and wrote a report to Dr. Firmin with the results of his consultation. In the report Dr. Staires indicated that he did see signs of exaggeration of symptoms for secondary gain or desire to convince others of the seriousness of her plight. His impression was that Wilczewski suffered from chronic thoracic pain syndrome and possible complex regional pain syndrome in the thoracic spine. Further, Dr. Staires stated that he clearly saw no contraindication to the trial of the spinal cord stimulator that Dr. Firmin was considering recommending.

Eddie Crawford, the adjuster working on the workers' compensation claim filed by Wilczewski, received a copy of this report written by Dr. Staires. As a result of the findings by Dr. Staires, Dr. Firmin testified that her office requested the trial of the spinal cord stimulator in October of 2006. Eddie Crawford testified that he received no such request from Dr. Firmin's office, but he did remember getting the request in October, but was not sure whether it was October of 2006 or 2007.

In February of 2007, per the recommendation of Dr. Bascilla's office that Wilczewski see a neurosurgeon, Wilczewski obtained Brookshire's approval to see Dr. Cavanaugh. She did not see him and instead saw Dr. Anil Nanda, a neurosurgeon.

Dr. Nanda saw Wilczewski for two visits. On the first visit, he reviewed the MRI of her lumbar spine. He also saw the disc bulges at L2-3 and L3-4. He then requested a myelogram/CT with flexion and extension of her lumbar spine to better evaluate the area. In the second visit, he read the results of the myelogram/CT to show moderate lumbar stenosis for L2 to L4, but he did not feel the films were dramatic. He did suggest that, should Wilczewski not improve, he would recommend a laminectomy from L2 to L4. In the two visits, Dr. Nanda noted the redness of Wilczewski's back but attributed it to excessive use of a heating pad.

At Brookshire's request, Wilczewski saw Dr. Karl Bilderback, an orthopedic surgeon. Dr. Bilderback saw her one time and concluded that she was at maximum medical improvement. Further, he found no objective finding to support Wilczewski's complaints of thoracic pain. He opined that there was no reason for a spinal cord stimulator, that she was magnifying her symptoms, and that she could return to work without restrictions. With regards to the redness of Wilczewski's back, Dr. Bilderback did not have any particular diagnosis and felt it would be helpful for Wilczewski to see a dermatologist.

Brookshire then requested Wilczewski to see Dr. Phillip Bergeron, a dermatologist. He concluded that the redness of her back was the result of prolonged use of a heating pad.

3

At Brookshire's request, Wilczewski saw Dr. Keven Pauza, a spine specialist for an independent medical evaluation. Dr. Pauza's opinion was that Wilczewski was cooperative, honest and forthright in her evaluation. He concluded the following:

· No objective evidence of thoracic or lumbar radiculopathy.

· He strongly disagreed with Dr. Nanda's suggestion for a possible laminectomy.

· Wilczewski did not benefit from the epidural steroid injection performed by Dr. Firmin because of the normal MRI of the thoracic spine.

· No evidence of reflex sympathetic dystropy.

· No indication for a spinal cord stimulator.

· The most likely diagnosis was chemical pain originating from a torn thoracic intervertebral disc or a torn thoracic facet joint capsule or a combination of the two.

· It was safe for Wilczewski to return to work should [sic] with restrictions on how she lifts.

· Wilczewski needed and he prescribed her Norco for pain.

Wilczewski also saw Dr. Renee Culver, a psychiatrist. Dr. Culver concluded that Wilczewski was either suffering from a pain disorder associated with psychological factors or factitious disorder, or that she was malingering.

For the duration of these treatments, Dr. Firmin was still seeing Wilczewski even though she never received approval for the trial of the spinal cord stimulator. She referred her to Dr. James W. Quillin, a psychologist, in order to help Wilczewski with any mental aspect of dealing with her pain. Dr. Quillin diagnosed her with depression secondary to chronic pain. He recommended and requested authorization from Brookshire for a behavioral pain management program. Brookshire denied this request.

Rather, Brookshire sent Wilczewski to be seen by Dr. Darren M[.] Strother, a psychologist. Dr. Strother diagnosed Wilczewski with malingering, pain disorder associated with psychological factors, and mood disorder.

4

Dr. Firmin continued to see Wilczewski, but she decided it would not be in Wilczewski's best interest if she were to continue to see her in November of 2007. Dr. Firmin ceased treating Wilczewski due to Brookshire's refusal to approve her recommendation that they attempt a trial of a spinal cord stimulator.

On June 11, 2007, the Plaintiff filed a 1008 against Brookshire seeking approval of the spinal cord stimulator and eventually evidence was allowed to be heard regarding the behavioral pain management recommended by Dr. Quillin. After a trial on the merits, the workers' compensation judge (WCJ) ruled that Wilczewski had proven that the trial of the spinal cord stimulator as well as the behavioral pain management program were reasonable and necessary for treatment of the work-related injury she suffered.

Additionally, the WCJ awarded Wilczewski penalties and attorney's fees for Brookshire's failure to reasonably controvert the requested cord stimulator and pain management program. In a very through reasons for ruling, the WCJ opined that Brookshire had failed in its duty under La.R.S. 23:1201 when it denied the requested treatments by selectively focusing on parts of physician's reports that tended to help its position rather than by considering the totality of the reports and following through with its statutory duty.

*Id.* at 1217-19.

In summary, Mrs. Wilczewski's accident occurred on December 22, 2005; she filed her disputed claim involving the spinal cord stimulator and behavioral pain management program on June 11, 2007; the WCJ rendered judgment on those issues on April 2, 2008; this court rendered an opinion affirming that judgment on January 28, 2009; and the supreme court denied Brookshire's application for supervisory writs on April 13, 2009.

On April 3, 2008, or one day after the WCJ rendered his oral reasons for judgment, the same Eddie Crawford referred to in this court's previous opinion wrote Mrs. Wilczewski's counsel informing him that Brookshire would cease paying Mrs. Wilczewski's weekly indemnity benefits on April 10, 2008. The letter suggested that Brookshire based this action on the testimony of Drs. Bilderback and Pauza to the

5

effect that Mrs. Wilczewski could return to work without restrictions. Brookshire has maintained this position throughout this second stage of this litigation.

On April 28, 2008, Mrs. Wilczewski filed a new disputed claim for compensation—this time seeking reinstatement of her indemnity benefits and statutory penalties and attorneys fees for the termination of her benefits. She later amended her claim to request additional statutory penalties and attorney fees based on Brookshire's failure to authorize her treatment with Dr. Michael Dole, an Alexandria, Louisiana pain management physician.

Because of the pending appeal, Mrs. Wilczewski did not receive the trial spinal cord stimulator or participate in a behavioral pain management program immediately after the April 2, 2008 decision. In fact, even after the supreme court denied its supervisory writ on April 13, 2009, Brookshire took no immediate steps to comply with the WCJ's judgment. Brookshire seemed content to take its time with regard to its obligations even after Mrs. Wilczewski's counsel wrote Brookshire's on April 17, 2009, and requested that it comply with the judgment—particularly that it approve in writing Mrs. Wilczewski's participation in the pain management program recommended by Dr. Quillin. It was not until May 15, 2009, or over one month after the supreme court had rejected its application for supervisory writs, that Brookshire responded affirmatively to the judgment—but even then only to send payment of the monetary amount it owed. Mrs. Wilczewski's counsel received this payment on May 20, 2009, but it was not until June 26, 2009, that Dr. Quillin received authorization for the program he recommended.

The nine-day trial of the spinal cord stimulator began on August 19, 2009, and upon its completion, Dr. Firmin declared it a success. Dr. Firmin then recommended

6

that Mrs. Wilczewski undergo a permanent spinal cord stimulator implant whereby two leads would be placed under the skin and at the thoracic spine. The leads would then be tunneled under the skin down to one side of either the left or right buttock and attached to a generator the size of a small pacemaker which would be placed in a small pocket located in the upper buttock. The generator is powered by rechargeable batteries which require changing every five to seven years. Dr. Firmin concluded that this was the only treatment option available to Mrs. Wilczewski.

On November 13, 2009, Brookshire supplemented its answer to Mrs. Wilczewski's claim by alleging that she and her husband intentionally misrepresented her medical condition and physical capacity in order to receive workers' compensation benefits. By correspondence dated November 30, 2009, Brookshire refused to authorize the permanent implant procedure recommended by Dr. Firmin.

Following a trial on the merits which began on April 15, 2010, the WCJ issued oral reasons for judgment awarding Mrs. Wilczewski $3,319.44 in statutory penalties and $4,500.00 in attorney fees based on Brookshire's violation of La.R.S. 23:1201(G); ordering the reinstatement of her temporary total disability benefits at the rate of $355.95 per week beginning on April 10, 2008; awarding her reimbursement of a $20.00 co-payment she paid to see Dr. Dole under her husband's health insurance; awarding her the implementation of a permanent spinal cord stimulator; awarding her $8,000.00 in statutory penalties and $12,000.00 in attorney fees pursuant to La.R.S. 23:1201(F) and (I); denying Brookshire's fraud allegations; and awarding her various costs associated with her claim and legal interest on all past due indemnity and medical benefits and on all statutory penalties and attorney fees awarded.

7

In its appeal of this judgment, Brookshire raises fourteen assignments of error:

1.      The Trial Court erred in finding that its judgment in the first suit of April 17, 2008 barred the defenses in the second suit.

2.      The Trial Court erred in unilaterally invoking the doctrine of *res judicata* in finding that its first judgment of April 17, 2008 precluded the defenses in the second suit.

3.      The Trial Court erred in finding that the defendant was liable for the permanent spinal cord stimulator.

4.      The Trial Court erred in failing to exercise its gatekeeping function when it allowed evidence of thoracic reflex sympathetic dystrophy and the use of a spinal cord stimulator to treat this condition.

5.      The Trial Court erred in disallowing the defendant's *Daubert/Foret* evidence concerning the scientific reliability of the diagnosis of thoracic reflex sympathetic dystrophy and the use of a spinal cord stimulator to treat this condition.

6.      The Trial Court erred in awarding the plaintiff temporary total disability benefits from the date of termination and continuing forward.

7.      The Trial Court erred in rejecting the defendant's affirmative plea of willful misrepresentation pursuant to *LSA-R.S. 23:1208*.

8.      The Trial Court erred in finding that the defendant was liable for plaintiff's pain management care with Dr. Michael Dole, M.D.

9.      The Trial Court erred in finding that the defendant was arbitrary and capricious for terminating the plaintiff's indemnity benefits.

10.     The Trial Court erred in finding that the defendant failed to reasonably controvert the plaintiff's entitlement to the permanent spinal cord stimulator.

11.     The Trial Court erred in finding that the defendant had failed to reasonably controvert the plaintiff's entitlement to treatment with Dr. Michael Dole, M.D.

12.     The Trial Court erred in awarding an attorney's fee of $4,500 for work on the single claim that the defendant failed to timely pay the preceding judgment.

13.     The Trial Court erred in awarding an attorney's fee of $12,000 for work on the remaining issues presented by the second suit.

14.    The Trial Court erred in failing to admit the video tape surveillance of the plaintiff taken in 2006 and 2007.

Mrs. Wilczewski has answered Brookshire's appeal seeking a reversal of the WCJ's dismissal of her request for statutory penalties based on Brookshire's late authorization and payment of her behavioral pain management program pursuant to La.R.S. 23:1201(G). She further requests an award of additional attorney fees for work performed by her counsel on appeal.

## OPINION

### *Standard of Review*

The standard of review applied to workers' compensation cases is well settled:

> In workers' compensation cases, the factual findings of the trial court are subject to the manifest error standard of review. *Smith v. Louisiana Dep't of Corrections*, 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132; *Freeman v. Poulan/Weed Eater*, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-38. In applying the standard, the appellate court must not determine whether the trier of fact's conclusion was right or wrong, but that it was reasonable. *Freeman*, 630 So.2d at 737-38; *Stobart v. State*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous. *Stobart*, 617 So.2d at 882. Therefore, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

*Landry v. Furniture Cent.*, 05-643, pp. 5-6 (La.App. 3 Cir. 1/11/06), 920 So.2d 304, 309, *writ denied*, 06-358 (La. 4/28/06), 927 So.2d 290.

### *Res Judicata*

In its first two assignments of error, Brookshire asserts that the WCJ erred in applying the doctrine of res judicata to the second stage of this litigation. Specifically, Brookshire asserts that the WCJ improperly noticed the res judicata argument on its own motion and that the WCJ erred in unilaterally invoking res

9

judicata to find that its defenses were barred by the previous judgment in favor of Mrs. Wilczewski. We find no merit in this argument.

The first issue is easily disposed of by reference to La.Code Civ.P. art. 927(B) which clearly states that the exception of res judicata "may be noticed by either the trial or appellate court on its own motion." A review of the record before us establishes that the second issue raised by Brookshire is equally without merit because the WCJ never invoked the application of the doctrine of res judicata.

The WCJ never mentioned res judicata in either its oral ruling or in the April 17, 2008 judgment. At most, the WCJ compared Brookshire's defense to Mrs. Wilczewski's April 28, 2008 filing to that asserted in its opposition to her June 11, 2007 filing and found that they were basically the same. This observation is supported by the record. Brookshire did indeed raise the same defense and introduced the same medical evidence that it had accumulated before the WCJ's April 2008 judgment.[2] Thus, in considering Brookshire's position with regard to Mrs. Wilczewski's past and current physical condition, the WCJ was presented with nothing more than a rehashing of the same medical evidence it had considered initially. Since Brookshire took no steps to obtain more current medical evidence in support of its defense, it cannot now be heard to complain that the WCJ rejected that evidence in favor of the more recent evidence and concluded that Mrs. Wilczewski continues to be disabled from her accident and requires the medical treatment recommended by Drs. Firmin and Quillin.

---

[2]The only difference was the introduction of depositions of Drs. Culver and Strother that had been taken subsequent to the April 2008 judgment, but even these depositions were based on examinations by these physicians performed in 2007.

*Spinal Cord Stimulator*

In its next three assignments of error, Brookshire argues that the WCJ erred in finding it liable for the implantation of a permanent spinal cord stimulator, in failing to exercise its gatekeeping function by allowing the introduction of evidence of thoracic reflex sympathetic dystrophy and the use of a spinal cord stimulator as treatment for that condition, and in denying its motion in limine addressing the scientific reliability of a diagnosis of thoracic complex regional pain syndrome as well as the use of a spinal cord stimulator to treat such a diagnosis. We will address these latter two issues first.

On April 8, 2010, or seven days prior to the beginning of the trial on the merits, Brookshire filed a motion in limine seeking to have Mrs. Wilczewski's claim dismissed based on the absence of any scientifically reliable methodology to support either the diagnosis of thoracic complex regional pain syndrome or the use of a spinal cord stimulator for that diagnosis. The WCJ considered this motion and rejected it at the beginning of the April 15, 2010 trial. Specifically, the WCJ found that the motion was untimely based on the sixty-day provision of La.Code Civ.P. art. 1425(F)(1):

> Any party may file a motion for a pretrial hearing to determine whether a witness qualifies as an expert or whether the methodologies employed by such witness are reliable under Articles 702 through 705 of the Louisiana Code of Evidence. The motion *shall be filed not later than sixty days prior to trial* and shall set forth sufficient allegations showing the necessity for these determinations by the court.

(Emphasis added).

A reading of the remainder of La.Code Civ.P. art. 1425(F) makes it clear why the sixty-day filing requirement is mandatory. When such a motion is filed, the trial court is required to hold a contradictory hearing at least thirty days prior to trial and, in the

11

event the trial court should take the matter under advisement, it may remain under advisement only five days. La.Code Civ.P. art. 1425(F)(2) and (3). Additionally, the statutory schedule gives the unsuccessful party the opportunity to seek immediate appellate review. La.Code Civ.P. art. 1425(F)(5).

In finding Brookshire's motion to be untimely, the WCJ pointed out that Brookshire had attempted to raise this motion in the previous proceeding,[3] that approximately two years had lapsed since that hearing, and that Brookshire had more than adequate time to comply with La.Code Civ.P. art. 1425(F). As stated by the supreme court, "While we recognize that the rules of evidence and procedure are relaxed in workers' compensation proceedings, such proceedings are nonetheless lawsuits to be conducted in conformity with the accepted standards of practice and procedure." *Taylor v. Tommie's Gaming*, 04-2254, p. 5 (La. 5/24/05), 902 So.2d 380, 383 (footnote omitted). We find no error in the WCJ' rejection of Brookshire's motion as untimely.

We further find no merit in Brookshire's argument that the WCJ failed in exercising its gatekeeping function by allowing Dr. Firmin's testimony regarding both the diagnosis of thoracic reflex sympathetic dystrophy and its treatment via a spinal cord stimulator. In *Chaisson v. Cajun Bag & Supply, Co.*, 97-1225, pp. 9-10 (La. 3/4/98), 708 So.2d 375, 381 (alteration in original), the supreme court stated:

> LSA-RS 23:1317 mandates that the hearing officer's factual findings be based on "competent evidence." LA.REV.STAT. ANN. 23:1317(A) (West Supp.1997). This legislative mandate is necessary because under the express language of LSA-RS 23:1317, worker's compensation hearing officers are "not bound by the technical rules of evidence." *Id.* In other words, the hearing officer has the discretion to admit evidence that would otherwise be inadmissible under the

---

[3]The issue was actually raised and rejected in the prior appeal in two of Brookshire's nine assignments of error. *Wilczewski,* 2 So.3d 1214.

12

Louisiana Code of Evidence. This more relaxed standard for the admissibility of evidence is the general rule in proceedings before administrative agencies. MCCORMICK ON EVIDENCE § 352 (4th ed.1992). The legislative requirement that a hearing officer's factual findings be based upon competent evidence is the safeguard that ensures that the factual findings are made on evidence that has some degree of reliability and trustworthiness, notwithstanding that the evidence might fall outside of the technical rules for admissibility. Therefore, when a reviewing court evaluates the factual findings of a hearing officer under the manifest error standard, it must determine whether the factual findings are reasonable *and supported by competent evidence in the record*. Although the Legislature has not defined "competent evidence," in order to give the relaxed evidentiary standard in LSA-RS 23:1317 effect, it must not be defined so narrowly as to mean only evidence that would fall within the parameters of the Louisiana Code of Evidence. If the hearing officer's factual findings are reasonably supported by competent evidence, then the reviewing court must affirm them.

Dr. Firmin described neuropathic pain as pain which is generated by nerve tissue. Unlike traditional or normal pain, which is carried to the brain as a stimulus by something other than nerve tissue, she stated that neuropathic pain has a burning or stinging quality. Dr. Firmin testified that this type of pain differs from traditional pain in two ways: it fails to resolve within an appropriate time frame and it can cause aberrations of the autonomic nervous system, i.e., "sweating, discoloration, hair going up on end, or hair coming back down on end."

According to Dr. Firmin, spinal cord stimulation is an advanced treatment for patients suffering from neuropathic pain. It confuses the brain by laying down a positive, pleasant stimulation on top of the unpleasant stimulation (neuropathic pain) so that the brain has to choose one or the other. Since the pleasant stimulation is located above the location of the neuropathic pain, the brain hopefully chooses the pleasant stimulation. She explained that the two leads of the spinal cord stimulator are placed in the epidural space a level above the damaged nerve tissue. Each lead has eight contacts, thereby creating sixteen possible interchangeable electrical fields

which can be manipulated to produce different sensations in an effort to confuse the brain.

Use of the spinal cord stimulator is not an automatic thing, according to Dr. Firmin. A patient being considered for this form of treatment must meet three criteria: neuropathic pain, the failure of all conservative methods of treatment, and a psychologically stable patient. Dr. Firmin stated that when she first considered this treatment for Mrs. Wilczewski, she met all three criteria.

Dr. Firmin testified that she determined the source of Mrs. Wilczewski's pain to be neuropathic because her pain did not originate from a determinable pain receptor source. That is to say, the pain was not produced from her faucet joints, a disc irritation, or an external nerve irritation. While Mrs. Wilczewski's subjective complaints were burning pain and pulling of the skin, she also exhibited mottled skin which stopped at the midline axillary line, a dermatomal pain consistently from T2-3 straight down to T9-10,and excessive sweating in that area.[4] She testified that she entertained a diagnosis of complex regional pain syndrome early in her treatment of Mrs. Wilczewski because of her interesting presentation. Now, based on Mrs. Wilczewski experiencing a greater than fifty percent reduction in pain from the spinal-cord-stimulation trial, Dr. Firmin was firmly convinced that Mrs. Wilczewski suffered from thoracic reflex sympathetic dystrophy. In fact, according to Dr. Firmin, Mrs. Wilczewski opposed removing the stimulator after the end of the trial period because of the relief she was receiving. Dr. Firmin stated that these findings led her to conclude that Mrs. Wilczewski fit the criteria for the implementation of a permanent stimulator and that this was the correct therapy for her.

---

[4]As time passed, the mottling and sweating ceased, but Dr. Firmin found this insignificant in the grand scheme of things.

With regard to future treatment, Dr. Firmin testified that because of the delay caused by Brookshire's refusal to authorize the permanent stimulator, Mrs. Wilczewski's current status, including her psychological status, would have to be evaluated to determine if she still met the required criteria. Because she had nothing more to offer Mrs. Wilczewski, Dr. Firmin had ceased seeing her patient on August 28, 2009.

Mrs. Wilczewski testified that the trial period using the spinal cord stimulator provided her with significant relief from her thoracic pain. Before the trial period began, she would have rated her pain level at eight on a ten point scale. By the end of the nine-day trial, that level had been reduced to three.

Brookshire's only response to Dr. Firmin's proposed treatment was to again submit the medical evidence obtained from 2007 examinations. Thus, Brookshire blindly relied on medical evidence which was more than two years old as justification to deny the treatment recommended by Dr. Firmin despite the fact that the only evidence before the WCJ was that the trial use of the spinal cord stimulator *actually gave Mrs. Wilczewski relief.* Instead of applauding such progress, Brookshire seemed satisfied with the status quo. In this court's prior opinion, the issue before the court was "whether it was reasonable and necessary that [Mrs. Wilczewski] would benefit either diagnostically, or by obtaining relief, or both, from the trial of the spinal cord stimulator." *Wilczewski*, 2 So.2d at 1224. Brookshire now attempts to challenge the positive evidence of relief through use of the spinal cord stimulator with three-year-old medical, which does not address the correct medical situation. That being the case, we find that the WCJ's evaluation of the evidence on this issue was reasonable and was based on competent evidence in the record.

15

The law is clear that an employer has a duty to furnish all reasonable and necessary medical treatment resulting from an employee's work-related accident. La.R.S. 23:1203(A). It is equally clear that encompassed in "reasonable and necessary medical treatment" is that palliative treatment necessary to relieve an employee of pain caused by their work injury. *Jennings v. Ryan's Family Steak House*, 07-372 (La.App. 1 Cir. 11/2/07), 984 So.2d 31.

After reviewing the record, we find no error in the WCJ's finding that Mrs. Wilczewski is entitled to the implementation of a permanent spinal cord stimulator.

***Temporary Total Disability Benefits***

In its next assignment of error, Brookshire argues that the WCJ erred in awarding Mrs. Wilczewski temporary total disability benefits (TTD) from April 10, 2008 forward. Brookshire bases this position on the argument that the WCJ erred in finding Mrs. Wilczewski unable to work because of her psychological status rather than her physical status, based on the recommendation of Dr. Quillin.

An employee who proves, by clear and convincing evidence, unaided by any presumption of disability, that she is physically unable to engage in any employment as a result of a work-related injury will be awarded TTD benefits. La.R.S. 23:1221(1). Disability can be proven by both medical and lay testimony, and the WCJ must weigh all of the evidence in order to determine whether the employee has satisfied her burden of proof. *Jack v. Prairie Cajun Seafood Wholesale*, 07-102 (La.App. 3 Cir. 10/3/07), 967 So.2d 552, *writ denied*, 07-2388 (La. 2/15/08), 976 So.2d 178. The WCJ's finding of disability is a factual determination that is subject to the manifest error analysis. *Id.*

16

Dr. Firmin testified that once the permanent spinal cord stimulator is implanted, Mrs. Wilczewski will be restricted from any turning or bending for eight weeks. She suggests that thereafter, Mrs. Wilczewski would require two to four additional months of reconditioning before she could return to work. Once reconditioning is completed, Mrs. Wilczewski should be able to perform at the same level of work she performed prior to her work accident.

Dr. Quillin, the only doctor to continuously see Mrs. Wilczewski since the first hearing, opined that she is presently unable to engage in any employment based on her current psychological status. As of July 13, 2009, Dr. Quillin's impression was that she was suffering from a mood disorder (depression) secondary to her medical condition (chronic pain syndrome); Bipolar Disorder, Type II (well controlled with treatment), somatization, and mixed personality features. Based on his knowledge of Mrs. Wilczewski, Dr. Quillin did not believe that she would be able to adequately manage even the low-grade stress experienced in any type of employment without deteriorating psychologically and experiencing a worsening of her depression or an exacerbation of her hypomanic episodes.

According to Dr. Quillin, Mrs. Wilczewski's depression was directly related to her pain. He explained that chronic pain results in substantial depression in most patients because the abnormal signal sent into the parts of the brain controlling emotional response, causes the patient to become depressed, which, in turn, causes the pain to seem worse.

Dr. Quillin also agreed that chronic pain patients experience a fear of reinjury and that it is natural for a person who is hurt to protect the injured part of their body. He explained that this guarded movement becomes a natural built-in response if the

17

pain is prolonged and that their response causes the patient to become deconditioned. At that point, even basic movement causes pain. For this reason, he encouraged Mrs. Wilczewski to be physically active.

During his treatment of Mrs. Wilczewski, Dr. Quillin observed that she developed a Type II Bipolar Disorder. He explained this as a milder type of Bipolar Disorder involving less manic episodes than Type I. Still, this condition caused Mrs. Wilczewski to go through episodes of extreme irritability, screaming, and throwing and smashing things. Although he felt that Mrs. Wilczewski was most likely genetically predisposed to this condition, Dr. Quillin felt that the stress caused by her pain was a relevant factor in causing the condition. He further testified that chronic pain patients are more likely to experience psycho-social consequences, i.e., not able to work, financial problems. Dr. Quillin did not feel Mrs. Wilczewski is capable of working as a cashier in a self-serve gas kiosk (a position proposed by Brookshire) based on the level of her depression and pain. He stated that unless one of these conditions resolves itself (the depression or the pain), she will have difficulty sustaining this position on a day-to-day basis.

Mrs. Wilczewski testified that she was physically incapable of working when Brookshire terminated her TTD and that nothing had changed since then. While she has good and bad days, she still suffers a pain level on a daily basis of six to eight on a scale of ten. She described her mid back as feeling numb or having a stabbing pain, and suggested that it feels as though a hatchet has been buried in her back. Because of her constant pain, she is careful to avoid quick movements.

Mrs. Wilczewski stated that prior to the trial stimulator, she had trouble sleeping or working around her home and that during the trial, she slept better, moved

better, and felt better. According to Mrs. Wilczewski, Brookshire queried her about an attendant position in a gas-station kiosk, but never followed up with her about the position. Although she feels she could perform this position for four to six hours per day, she does not think she could work an eight-hour shift. She further stated that her Brookshire store does not have a gas station with a kiosk.

Mrs. Wilczewski testified that she is the primary grocery shopper in the family and that she daily waters the family dogs and sweeps the back porch. She testified that watering the dogs requires her to carry a water bowl weighing approximately five to six pounds a distance of five to ten yards. She sweeps the porch once or twice a day depending on both the porch's condition and her condition.

David Wilczewski testified that his wife never had any mid-back complaints prior to her work accident, but that she has complained constantly since then. He testified that his wife could not return to work when Brookshire terminated her employment and since that time, there has been no change in her condition.

According to Mr. Wilczewski, Mrs. Wilczewski walks more carefully and guardedly and she has become anxious and agitated because of her injury. He testified that she has complained of a weight gain from taking her medication, and he acknowledges that this might possibly be the cause of some of her anxiety and depression. Mr. Wilczewski stated that there was no noticeable change in Mrs. Wilczewski's behavior after she completed the behavioral pain management program.

Mr. Wilczewski testified that since the accident, Mrs. Wilczewski no longer cuts the grass in their yard, but that she washes clothes, occasionally cooks, waters the dogs, and sweeps the porch. The most weight she picks up is approximately five

pounds. He testified that while they normally shop together, there are times that Mrs. Wilczewski shops by herself and carries in the groceries by herself.

Mr. Crawford testified that he terminated Mrs. Wilczewski's weekly indemnity benefits on April 10, 2008, based on his belief that none of Brookshire's examining doctors found any objective reason for Mrs. Wilczewski's pain, there was no recognized diagnosis for thoracic reflex sympathetic dystrophy, and because treatment via a spinal cord stimulator was not indicated in this instance.[5]

Although the WCJ's award of the trial stimulator was eventually affirmed by the supreme court and the actual trial was declared a success by Dr. Firmin, Mr. Crawford relied on the same medical records to deny Mrs. Wilczewski's request for a permanent spinal cord stimulator. He admitted that he never inquired about the results of the trial stimulator nor did he contact Dr. Firmin's office. He stated that he made no further attempts to gather any new information pertaining to thoracic reflex sympathetic dystrophy because as far as he knew, nothing had changed in the medical literature. Mr. Crawford testified that he also relied on surveillance video of Mrs. Wilczewski which contradicted her prior statements to Brookshire's physicians concerning her ability to function. He stated that the video showed her acting normally at home, sweeping, carrying her dogs' water bowl, feeding the dogs, etc. He said that these actions contradicted Dr. Bilderback's report that Mrs. Wilczewski moved very slowly, took small steps, was very rigid, and complained of the pain while bending over.

_____

[5]Mr. Crawford relied on the medical records of Drs. Bilderback, Pauza, Strother, Culver, and Staires. In doing so, he completely ignored the WCJ's ruling concerning the trial of the spinal cord stimulator—a finding that most would consider as being at least indicative of the WCJ's conclusion that Mrs. Wilczewski suffered from some disabling condition.

The WCJ held that Mrs. Wilczewski was currently disabled and entitled to TTD based on the opinions of both Drs. Firmin and Quillin. The WCJ rejected Brookshire's reliance on its previously introduced medical records and held that since Mrs. Wilczewski was still in need of treatment via the permanent spinal cord stimulator, she was still disabled and entitled to TTD.

After reviewing the record, we find no error in the judgment of the WCJ reinstating Mrs. Wilczewski's TTD from April 10, 2008, and onwards. Drs. Quillin and Firmin are the only doctors to treat Mrs. Wilczewski since the first hearing; thus, they are the only doctors who are familiar with her current condition. As such, it was not unreasonable for the WCJ to rely on their opinions in determining that Mrs. Wilczewski has been and still is disabled and entitled to TTD. Mr. Crawford was unapologetic and almost arrogant in his reasons for terminating Mrs. Wilczewski's benefits. As far as he knew, there was no new medical literature concerning thoracic reflex sympathetic dystrophy. In fact, Mr. Crawford testified that he should have terminated Mrs. Wilczewski's indemnity benefits long before he did, but he "just didn't do it" because he had "[l]ots of other cases going on." He admitted that the only reasons he reviewed Mrs. Wilczewski's case was because he was prompted to by the WCJ's April 2, 2008 ruling. Accordingly, we find no error in the WCJ judgment awarding the reinstatement of Mrs. Wilczewski's TTD as of April 10, 2008, and continuing onwards.

Brookshire further argues that the WCJ erred in finding that it was arbitrary and capricious in terminating Mrs. Wilczewski's indemnity benefits. Louisiana Revised Statutes 23:1201(I) provides for the award of statutory penalties and attorney fees based on the employer's discontinuance of indemnity benefits if the

21

discontinuance is found to be arbitrary and capricious or without probable cause. "Arbitrary and capricious conduct is 'willful and unreasonable action, without consideration and regard for the facts and circumstances presented.'" *Key v. Monroe City Sch. Bd.*, 45,096, p. 10 (La.App. 2 Cir. 3/10/10), 32 So.2d 1144, 1151 (quoting *J.E. Merit Constructors, Inc. v. Hickman*, 00-943, p. 5 (La. 1/17/01), 776 So.2d 435, 437-38).

We find no need to reexamine Brookshire's actions in terminating Mrs. Wilczewski's indemnity benefits. Needless to say, we find that Mr. Crawford's actions in this instance are classic examples of the definition of "arbitrary and capricious." Accordingly, this assignment of error is dismissed as being without merit.

### Willful Misrepresentation

In its next assignment of error, Brookshire argues that the WCJ erred in rejecting its affirmative plea of willful misrepresentation pursuant to La.R.S. 23:1208. Brookshire bases its right to seek forfeiture of benefits on statements it claims Mrs. Wilczewski made to several doctors which misrepresented both her mental and physical condition. However, these statements were made in conjunction with the medical examinations conducted in 2007, prior to the first hearing. As we have already discounted these medical records, we need not address those claims. However, Brookshire also relies on video surveillance which it claims shows Mrs. Wilczewski performing activities she swore she was unable to perform. In this instance, the video surveillance shows Mrs. Wilczewski watering her dogs, sweeping the porch, bending down, and helping her husband carry a chair into their house.

22

Louisiana Revised Statutes 23:1208(A) provides in pertinent part that "[i]t shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation." In order to prove fraud as defined by this provision, an employer must prove: (1) a false statement or misrepresentation by the employee, (2) willfully made, and (3) that it was made for the purpose of obtaining workers' compensation benefits. *Campbell v. City of Leesville*, 07-1061 (La.App. 3 Cir. 1/30/08), 974 So.2d 908, *writ denied*, 08-491 (La. 4/25/08), 978 So.2d 366. Upon proof of these three elements, the penalty to the employee is forfeiture of the right to recover any workers' compensation benefits. La.R.S. 23:1208(E).

Mrs. Wilczewski denied intentionally lying to Brookshire or its attorney. When questioned about the surveillance video, she admitted that she sweeps her porch, that she changes her dogs' water daily, and that she did help her husband carry an overstuffed chair from his truck into their house. Mrs. Wilczewski stated that the water bowl weighs approximately five pounds when filled with water and that she carries it approximately five to ten yards. She further explained that the chair was a Christmas present, which her husband brought home the day after Christmas. She stated that she helped him carry it ten to fifteen yards from his truck into the house because it began raining. She admitted that she should not have helped, but she said she did so and her back hurt the next day as a result. Mrs. Wilczewski said that the chair weighed between forty-five and fifty pounds and that it was hard for one person to carry because of its bulky in shape. In an earlier deposition, Mrs. Wilczewski testified that the most weight she lifts is between five and ten pounds. When asked

about this statement, she stated that she was sure she had lifted heavier, but she did not recall making that statement.

Mrs. Wilczewski was also asked about a photograph which depicts her bending over and touching her toes/shoes. In her deposition, she stated that she was unable to do so. The surveillance video showed her performing and holding this pose for approximately fifteen seconds. When questioned concerning the discrepancy between her actions and her earlier testimony, Mrs. Wilczewski stated that she can touch her toes, although she admitted that it hurts to do so. She could not say how often she performs this maneuver and stated that she just does it when she has to or when it just happens.

When questioned about Mrs. Wilczewski helping move the chair, Dr. Firmin testified that reflex sympathetic dystrophy is not a structural abnormality. Thus, she stated that Mrs. Wilczewski should be able to lift any weight she did prior to the accident without worsening her condition. Yes, she said Mrs. Wilczewski will feel pain, but structurally, she is still intact. Moreover, Dr. Quillin testified that he encouraged Mrs. Wilczewski to be active.

In rejecting Brookshire's fraud defense, the WCJ found no great inconsistency between Mrs. Wilczweski's medical condition, her prior comments, and the video depiction of her actions. Furthermore, he found Mrs. Wilczewski to be forthright and straight forward about what occurred in the video.

After reviewing the record, we find no error in the WCJ's rejection of Brookshire's fraud defense. The video shows Mrs. Wilczewski sweeping, watering her dogs, bending down, and, once, assisting her husband in moving a chair. Although certain of these activities may contradict Mrs. Wilczewski's deposition

testimony, we do not find that these contradictions rise to the level of willful fraudulent actions intended by La.R.S. 23:1208. Mere contradictions between an employee's testimony and surveillance video does not automatically result in a violation of La.R.S. 23:1208. *Palmer v. Schooner Petroleum Servs.*, 02-397 (La.App. 3 Cir. 12/27/02), 834 So.2d 642, *writ denied*, 03-367 (La. 4/21/03), 841 So.2d 802. Accordingly, the WCJ judgment denying Brookshire's fraud defense is affirmed.

### *Pain Management Treatment*

In its next assignment of error, Brookshire argues that the WCJ erred in finding it liable for Mrs. Wilczewski's pain management care with Dr. Michael Dole, an Alexandria, Louisiana pain management physician. However, we find no error and affirm the WCJ's judgment on this issue.

Mrs. Wilczewski testified that she sought authorization from Brookshire for pain management treatment by Dr. Dole upon Dr. Quillin's recommendation after her discharge from Dr. Firmin's care. She stated that Brookshire refused her request. She stated that she was seen twice by Dr. Dole, which visits were paid by her husband's health insurance after she paid a $20.00 co-pay. She said that her husband's insurance refused to pay for any further visits after learning that this was a workers' compensation matter.

Dr. Firmin explained that she practices interventional pain treatment, which involves targeted treatments such as injections. She stated that she does not provide medication management services for patients. Dr. Firmin testified that she discharged Mrs. Wilczewski from her care because she had no further treatment to offer her. At that point, Mrs. Wilczewski was not receiving pain management treatment from any doctor.

25

Mr. Crawford testified that he refused Mrs. Wilczewski's request to see Dr. Dole despite the fact that he knew Dr. Firmin was withdrawing from her care. He stated that he did so because she had already seen two pain management specialists: Dr. Firmin and Dr. Staires. Thus, he felt that he had no further obligation to approve treatment for her by a pain management specialist.

Louisiana Revised Statutes 23:1121(B)(1) provides:

> The employee shall have the right to select one treating physician in any field or specialty. . . . After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty."

Here, Mrs. Wilczewski received pain management treatment from Dr. Firmin. However, once Dr. Firmin discharged Mrs. Wilczewski, she was not receiving pain management treatment from any doctor. We find no merit in Mr. Crawford's argument that she had also received this type of treatment from Dr. Staires.

Louisiana Revised Statutes 23:1121(2)(a) provides, "If the employee is treated by any physician to whom he is not specifically directed by the employer or insurer, that physician shall be regarded as his choice of treating physician." Mrs. Wilczewski was seen by Dr. Staires once in 2007, at the request of Dr. Firmin for a second opinion with regards to the proposed trial of the spinal cord stimulator. Thus, Dr. Staires has never treated Mrs. Wilczewski. Accordingly, we find that Mrs. Wilczewski was entitled to see Dr. Dole for pain management treatment after Dr. Firmin discharged her as a patient.

Brookshire further argues that the WCJ erred in finding that it failed to reasonably controvert Mrs. Wilczewski's right to treatment with Dr. Dole. Louisiana Revised Statutes 23:1201(F) provides for penalties and attorney fees based on the

employer's failure to reasonably controvert the employee's request to change physicians when such consent is required by La.R.S. 23:1121."

We find no merit in Brookshire's argument. Mr. Crawford admitted that he was aware of Dr. Firmin withdrawing from Mrs. Wilczewski's treatment. Considering the foregoing, the WCJ judgment finding that Brookshire failed to reasonably controvert Mrs. Wilczewski's request to see Dr. Dole is affirmed.

***Attorney Fees***

Brookshire next argues that the WCJ erred in awarding Mrs. Wilczewski $4,500.00 in attorney fees based on its failure to timely pay the prior judgment. Although Brookshire does not contest that it was late in paying the judgment, it argues that $4,500.00 awarded for attorney fees is excessive as the trial in this matter only lasted approximately thirty minutes.

Louisiana Revised Statutes 23:1201(G) provides for the award of statutory penalties and reasonable attorney fees based on the late payment of an award payable under the terms of a final nonappealable judgment.

Mr. Crawford admitted that he failed to timely pay the amount awarded under the prior judgment to Mrs. Wilczewski. He also testified that the behavioral pain management program was not authorized by him until June 26, 2009. This was despite the fact that Mrs. Wilczewski's counsel wrote Brookshire on April 17, 2009, notifying it of the denial of its writ in the prior matter.

In addition to the thirty-minute trial, Mrs. Wilczewski's counsel filed the Motion and Order for Rule to Show Cause for LSA-R.S. 23:1201(G) Penalties and Attorneys Fees and recovered $16,330.99 for Mrs. Wilczewski. Therefore, we find no error in the WCJ's award of $4,500.00.

27

Brookshire next argues that the WCJ erred in awarding Mrs. Wilczewski $12,000.00 in attorney fees based on its violation of La.R.S. 23:1201(F). As we have already held that the WCJ did not err in awarding Mrs. Wilczewski statutory penalties based on Brookshire's termination of her indemnity benefits, its failure to authorize the permanent spinal cord stimulator and pain management treatment by Dr. Dole, we also find that he is entitled to an award of reasonable attorney fees. Finding that $12,000.00 is a reasonable amount, we affirm the WCJ's award.

### *Video Surveillance*

In its final assignment of error, Brookshire argues that the WCJ erred by refusing its admission of video surveillance taken of Mrs. Wilczewski in 2006 and 2007. The WCJ sustained Mrs. Wilczewski's objection to this evidence since she was not provided a copy of the video prior to trial. "[I]f a party fails to proffer excluded evidence, an appellate court cannot analyze it and its admissibility, and that party is precluded from complaining of the excluded testimony." *Whitehead v. Kan. City S. Ry. Co.*, 99-896, p. 11 (La.App. 3 Cir. 12/22/99), 758 So.2d 211, 218-19, *writ denied*, 00-209 (La. 4/7/00), 759 So.2d 767. As Brookshire failed to proffer the excluded evidence, we need not address this issue on appeal.

### *Answer to Appeal*

In her answer to appeal, Mrs. Wilczewski argues that the WCJ erred in denying her request for statutory penalties based on Brookshire's failure to timely authorize her participation in the behavioral pain management program recommended by Dr. Quillin.[6] Since Brookshire failed to authorize the behavioral pain management

---

[6]In his oral reasons for judgment, the WCJ twice stated that the award of penalties for Brookshire's violation of La.R.S. 23:1201(G) included those associated with its late approval of the behavioral pain management program. However, the judgment states that the WCJ denied Mrs. Wilczewski's claim for penalties on this issue. Therefore, we will consider this claim as being denied. *See Bancroft v. Mitchell Offshore Marine*, 09-1067 (La.App. 3 Cir. 5/19/10), 44 So.3d 711,

program within the thirty days following the supreme court's denial of its writ, we find that the WCJ erred in failing to award Mrs. Wilczewski statutory penalties.

Louisiana Revised Statutes 23:1201(G) raises two questions: (1) was the payment timely, and (2) if not, did the delay result from conditions beyond the employer's control. The first question results in a straight yes or no answer. The second question delves into the reasons behind the employer's late payment, which is a finding of fact subject to the manifest error standard of review. If the WCJ finds that the employer had no control over the delay, then no penalties and attorney fees are awarded. However, if the delay resulted from the employer's own actions, then the award is automatic.

Mr. Crawford testified that he learned that writs were denied by the supreme court in the prior matter a few days after April 13, 2009. He further acknowledged that a letter sent to Brookshire's counsel on April 17, 2009, requested that Brookshire notify Dr. Quillin of its approval for the behavioral pain management program. Mr. Crawford testified that Brookshire did not approve the program until June 26, 2009, three days after receiving a fax transmittal from Dr. Quillin's office requesting its approval.

Although La.R.S. 23:1201(G) pertains to the late payment of a monetary award under the terms of a final nonappealable judgment, we still find that Mrs. Wilczewski is entitled to attorney fees based on Brookshire's late approval of the subject program. Accordingly, we reverse the WCJ's denial of this issue and we render judgment awarding her an additional $3,000.00 in statutory penalties based on Brookshire's

_writs denied_, 10-2336, 10-2358 (La. 12/10/10), 51 So.3d 730, 733.

failure to approve and pay for the behavioral pain management program within thirty days of when the WCJ's final judgment became final.

Mrs. Wilczewski further requests that we award additional attorney fees for the legal services rendered by his counsel in successfully defending this appeal. Accordingly, we render judgment in favor of Mrs. Wilczewski to award an additional $7,500.00 in attorney fees for legal services rendered on appeal.

## CONCLUSION

For the foregoing reasons, the judgement of the WCJ is affirmed as amended. We further render judgment to award an additional $3,000.00 in statutory penalties pursuant to La.R.S. 23:1201(G), based on Brookshire's late approval and payment of a behavioral pain management program, and an additional $7,500.00 in attorney fees for legal services rendered by Mrs. Wilczewski's counsel's successful defense of this appeal. We assess costs of this appeal to Brookshire Grocery Company.

**AFFIRMED AS AMENDED AND RENDERED.**